UNITED STATES of America ex rel. Douglas LOWERY

v.

Alfred T. RUNDLE, Superintendent, State Correctional Institution, Graterford, Pa.

Civ. A. No. 71–401.

United States District Court, E. D. Pennsylvania.

May 24, 1971.

Douglas Lowery, pro se.

Arlen Specter, Dist. Atty., Philadelphia County, Philadelphia, Pa., for respondent.

## OPINION AND ORDER

EDWARD R. BECKER, District Judge.

On February 19, 1971, relator, a state prisoner serving a life sentence following his conviction for murder in the first degree in the Court of Quarter Sessions of Philadelphia County, filed a petition for a writ of habeas corpus alleging that his right to remain silent under the fifth amendment, as applied to the states through the fourteenth amendment [Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)], was violated by the Assistant District Attorney's remarks in his opening statements to the jury.

Relator was tried and found guilty before Judge James T. McDermott and a jury on April 1, 1966. The Commonwealth's evidence was to the effect that: (1) relator, while riding in an automobile, saw the victim, James Young, walking on the street in the vicinity of 21st Street and Columbia Avenue in Philadelphia; (2) relator, after making derogatory comments about Young and stating that he would kill Young, took a gun from his wife and left the auto; and (3) relator approached Young, had a few harsh words with him, and then shot him twice. While the defense was predicated upon inadequate identification by the Commonwealth's eyewitnesses, the jury believed them.

On April 5, 1968, relator filed motions for a new trial or in arrest of judgment.

On April 8, 1969, Judge McDermott entered an opinion and order denying these motions. Thereafter, relator attacked his conviction by appealing from his judgment of sentence to the Supreme Court of Pennsylvania. On appeal, relator relied upon the same grounds upon which he now bases his writ of habeas corpus. On April 9, 1970, the Supreme Court, in an opinion by Justice O'Brien, affirmed the judgment of sentence. Commonwealth v. Lowery, 440 Pa. 361, 269 A.2d 724 (1970). Relator has therefore exhausted all available state remedies and his case is in proper posture for an adjudication of his constitutional claim.

After a careful review of the entire state court record, including the Assistant District Attorney's opening remarks, we conclude that relator's right to remain silent under the fifth amendment was not violated. During the Assistant District Attorney's opening remarks, the following colloquy took place:

"MR. HECKSCHER [Assistant District Attorney]: Sir, could I briefly discuss the problem of premeditation with them?

THE COURT: Yes, you may proceed on this.

MR. HECKSCHER: I believe His Honor will charge you that where a killing is accomplished by premeditation, that that killing, such a killing is murder in the first degree.

For this reason, Ladies and Gentlemen of the Jury, I ask you to listen closely, particularly to the testimony that the Commonwealth will introduce which will show that well in advance of this brutal, senseless killing that this defendant had formed the intention and the design to do what he did.

I will also ask you to listen very closely to testimony from Commonwealth witnesses *and from the defendant himself if he gets on the stand* that will show this defendant's callous attitude not only towards the decedent, whom he brutally slayed, but al-

so towards all human life and the life which he had snuffed out.

MR. McCRUDDEN [counsel for defendant]: Your Honor, this is objected to.

THE COURT: Sustained. I think, Mr. Heckscher, at this juncture an outline of your case and what you purport to prove is the substance of your opening address.

MR. McCRUDDEN: Your Honor, it goes further than that now. There's a tendency on this, before trial even begun [sic], to attempt to prejudice the Jury, or any fact finder, against the defendant. What he's doing in effect is saying what his attitude is towards the defendant. I think it is a serious error and I think a Juror should be withdrawn because of it.

THE COURT: Denied.

MR. McCRUDDEN: *I think the Jury should be instructed to ignore what statements he made.*

THE COURT: *Which statements?*

MR. McCRUDDEN: *With regard to the attitude of the defendant,* not only towards the decedent, but towards the Police Department and others.

MR. HECKSCHER: I didn't say the Police Department.

MR. McCRUDDEN: To others, you stated, human life." (N.T. 9–11, emphasis added).

■ Unlike the case of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), where the Supreme Court held that the prosecutor's and the trial judge's adverse comments on the defendant's failure to testify on his own behalf violated the fifth amendment, in the case at bar the Assistant District Attorney made no adverse comments on the relator's failure to take the stand. Instead, he merely asked the jury to consider the relator's callous attitude *if* he did take the stand. Furthermore, unlike *Griffin*, here the remarks were made in the Assistant Dis-

trict Attorney's opening statement, not in his closing argument to the jury. In addition, *immediately after* the disputed remarks, the court adequately instructed the jury not to give improper weight to the opening statement:

"THE COURT: Members of the Jury you will of course concern yourselves only with testimony that comes from the witness stand. Statements made by counsel, either for the Commonwealth or Defense, are merely their statements and have no evidentiary weight as far as you are concerned. How counsel for the defendant or the Commonwealth classifies any of the evidence is not testimony as far as you are concerned." (N.T. 11–12).

Moreover, at the conclusion of the evidence, the court included the following charge to the jury:

"The failure of the defendant to take the witness stand and testify in his own behalf does not create any presumption against him. The fact that he did not take the witness stand in his own behalf cannot be weighed in the slightest degree against the defendant, nor should this fact enter into the discussions or the deliberations of the Jury in any way.

The defendant is not obliged to take the stand in his own defense, and not taking the stand in his defense cannot be used and should not support any inferences of any kind whatever. Even in the slightest degree it should not be part of your deliberations." (N.T. 387–88).

■ The Supreme Court's decision in Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), clearly indicates that comments which, if made during the trial or in a closing address, would be reversible error, may not be error when they are made in an opening address and followed by a proper limiting instruction by the court. In *Frazier*, the prosecutor, in his opening statement to the jury, referred to testimony expected to be given by a co-con-

spirator who had already confessed to his part in the crime. While making these remarks and referring to a confession by the co-conspirator, the prosecutor held a white paper in his hand which he used to refresh his memory and which gave the appearance that the prosecutor was referring to the confession. The co-conspirator was called to the stand but refused to testify at the trial; the defendant therefore alleged that the statements made by the prosecutor in his opening statement violated his constitutional right of confrontation guaranteed under the sixth amendment, citing Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The Court, in holding that these statements did not constitute error, stated:

"This was done not during the trial, while the person making the statement was on the stand, but in an opening statement. In addition, the jury was told that the opening statement should not be considered as evidence. Certainly the impact of the procedure used here was much less damaging than was the case in *Douglas*." *Id.* at 735, 89 S.Ct. at 1422.[1]

The trial court's instructions in the instant case, that the opening statements were not to be considered as evidence, clearly rebut any contention that relator's constitutional rights were violated by the Assistant District Attorney's opening remarks to the jury. As the Supreme Court noted in *Frazier, supra,* "[I]t does not seem at all remarkable to assume that the jury will ordinarily be able to limit its consideration to the evidence introduced during the trial." *Id.* at 736, 89 S.Ct. at 1423.

We note in addition, that even if the prosecutor's remarks could be considered an infringement upon the relator's right to remain silent, it is clear from the notes of testimony that the relator has waived this objection. Although objection was made by defendant's counsel at the time that the Assistant District Attorney made this statement, the objection was not made on fifth amendment grounds, but rather was in reference to the characterization of the relator's "attitude." The Supreme Court has held that the failure to object to testimony on constitutional grounds at the time of the trial, in order for the judge to cure any defect which may occur, may, under state procedural rules, constitute a waiver of constitutional objections on that issue. Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). The Pennsylvania cases clearly indicate that the proper administration of justice dictates that a court should not consider issues on appeal, including constitutional objections, which were not raised at trial, when the trial court could have corrected the error had it then been brought to its attention. *See* Commonwealth v. Myers, 439 Pa. 381, 266 A.2d 756 (1970); Commonwealth v. Scoleri, 432 Pa. 571, 248 A.2d 295 (1968); Commonwealth v. Simon, 432 Pa. 386, 248 A.2d 289 (1968).

The primary purpose of a habeas corpus proceeding is to make certain that relator is not unlawfully incarcerated in contravention of the federal constitution. *See* Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950). Here, however, we conclude that relator's conviction rests on a state proceeding which afforded relator all of his constitutional rights.

---

[1]. In Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), the Supreme Court held that it was error for the prosecutor to call the defendant's co-conspirator to the stand and, upon the co- conspirator's refusal to testify, read his alleged confession to him, since the defendant was unable to cross-examine the co-conspirator as to the alleged confession.