## Commonwealth *v.* McGlory, Appellant.

494

Submitted November 15, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent.)

*Robert X. Medonis,* for appellant.

*Thomas More Lilly, Robert L. Eberhardt,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., December 11, 1973:

Appellant contends that he was denied his constitutional rights when the Commonwealth was permitted to prove that physical evidence seized from the appellant at the time of his arrest was a narcotic drug. Claiming that the evidence had inadvertently been destroyed or lost, the Commonwealth was allowed to establish the corpus delicti on the basis of oral testimony and scientific documentation. Appellant argues that this indirect method of proof was a violation of his right of confrontation and cross-examination.

The facts of the case may be summarized as follows:

On the evening of September 16, 1969, four plainclothes officers of the Pittsburgh Police Department set up a surveillance of a portion of the 2000 block of Centre Avenue encompassing a business establishment known as Erv's Bar. The police stationed themselves at the windows of the second floor of the Number Two Police Station, and through the use of high-powered binoculars, watched the "known drug-traffic area" for a "score" (a sale of drugs). After about fifteen minutes, they observed the appellant in front of the bar. He was approached by four or five different individuals and was seen taking, counting and pocketing money into his right pants pocket. In return, police observed that appellant handed the individuals articles which he removed from a bag in his left pants pocket. While one of these transactions was taking place, police approached from different directions, and when the police identified themselves, a young girl who had been conducting business with the appellant, fled, and the appellant tried to empty the contents of a vial he was holding in his right hand.[1] Police then announced that appel-

---

[1] One of appellant's other contentions, which does not require extensive comment, is that this series of events did not serve as a reasonable basis from which the police could obtain "probable cause" to search him and make an arrest. We are unable to identify an impropriety in the steps the police took to discover and investigate what they suspected was a base of drug traffic activity. Their observations of the appellant, during which several contacts were made under suspicious circumstances, and at which police noticed articles in cigarette packs and vials being passed in exchange for money, certainly justified the police in approaching the appellant. When they did, and one of the "buyers" fled and appellant tried to frantically empty the contents of a vial, police had "probable cause" to search the appellant and make the arrest. If the instant case does not supply such cause, we would be hard-pressed to identify an appropriate and lawful set of circumstances. Crime detection is a vital function of the police department, and when properly conducted, and when steps are taken to avoid infringement of personal safeguards with caution and certainty practiced before a sus-

lant was under arrest. Officer Taliaferro testified at trial that a scuffle ensued, during which appellant tried to escape and resist submission. Two other officers had to aid Officer Taliaferro in bringing the appellant under control.[2]

After subduing the appellant, police found $111.15 as well as a vial containing four capsules, and a cigarette pack containing thirteen capsules of white powder. Officer Taliaferro testified that the materials seized were taken immediately to the inspection branch of the Narcotics Section of the Public Safety Building, where he and an Officer Bryant packaged and labeled the materials in a manila envelope. The envelope was placed in a safe and later delivered by Officer Bryant to the Crime Laboratory for analysis. Analysis revealed that the capsules contained heroin, procaine and cocaine.

Appellant was thereafter indicted on charges of possession and sale of narcotic drugs, assault and battery on a police officer and resisting arrest. Appellant was denied a pre-trial motion to suppress, and the case came up for trial before the Honorable Joseph H. RIDGE of the Common Pleas Court of Allegheny County and a jury. In the course of Commonwealth's opening statement, appellant's counsel moved for a withdrawal of a juror because of prejudicial remarks made by the district attorney. The jury was discharged, and a mis-

---

pect is singled out, we fully support such action. In this case, we believe that the police acted with "reasonable" and "probable cause." *Henry v. United States*, 361 U.S. 98 (1959) ; *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A. 2d 304 (1963).

[2] Appellant contends that the trial court erred in charging the jury on the elements of assault and battery and resisting arrest. He argues that the record did not support those charges, and the charges should have been dropped. On the basis of the testimony given by the police officers, who approached, arrested and subdued the appellant, there is ample evidence to justify the court's charge.

trial declared. A subsequent trial before another jury resulted in a guilty verdict on all charges.[3] Post-trial motions were denied, and this appeal followed.[4]

Appellant's primary contention which requires close examination is that oral testimony about material seized which formed the basis of the charges against him should not have been permitted, where the physical evidence had been destroyed and the chain of events were not established. The basis of appellant's argument is that to allow this "secondary" evidence is to deny him of his Sixth Amendment right of confrontation, which includes the right of cross-examination. He submits that this safeguard is established by the United States Supreme Court cases of *Pointer v. Texas*, 380 U.S. 400 (1965) and *Douglas v. Alabama*, 380 U.S. 415 (1965). Those cases, however, involved the denial of cross-examination of prosecution *witnesses* and the submission of testimony from a prior hearing at which cross-examination was not permitted.

---

[3] Appellant argues that a second trial following a mistrial declared because of improper remarks made by a district attorney in his opening statements was in violation of the Double Jeopardy provisions of the Constitution. It should be noted that the mistrial was declared at the instance of the defense counsel. This was not a case where the Court declared a mistrial *sua sponte*. The cases cited by the appellant are inapposite, and under the circumstances of this case, no double jeopardy resulted nor was there any injustice in submitting the case to another jury for retrial.

[4] Appellant argued at trial and in his post-trial motions that the trial court had breached its duty to remain impartial by extensively questioning Commonwealth witnesses. We have reviewed the record and find no indication "of any bias or feeling or undue protraction of the questioning by the court below" as might require a new trial. *Commonwealth v. Brown*, 438 Pa. 52, 63, 265 A. 2d 101, 107 (1970). There is no impropriety from the mere fact that the trial judge questions witnesses, where such questioning is for the purpose of clarifying or making more certain important and disputed points. *Commonwealth v. Myma*, 278 Pa. 505, 508, 123 A. 486 (1924).

In the instant case, the appellant was given full latitude to cross-examine the prosecution witnesses and attack any portion of the laboratory report. There are no cases in this Commonwealth that require the production of tangible physical evidence, and "there exists no such rule as expounded by the defendant which would automatically necessitate his acquittal upon the Commonwealth's failure to produce physical evidence shown to be unavailable." *Commonwealth v. Cromartie,* 222 Pa. Superior Ct. 278, 280, 294 A. 2d 762, 763 (1972) ; see also, *Commonwealth v. Gazal,* 185 Pa. Superior Ct. 91, 137 A. 2d 814 (1958).

The fact that the inability of the Commonwealth to produce physical evidence in some cases would not serve as a basis for a reversal of a conviction does not mean that the Commonwealth does not have a burden in establishing the unavailability of the evidence and that the testimony is based upon an unbroken chain of events supporting the validity and connection to the evidence thereof. While the Commonwealth was unable to produce the drugs themselves because of inadvertent destruction of the evidence, the chain of custody, starting with the seizure of the materials from the appellant and leading up to the analysis of the material by the Crime Laboratory, which identified the material as narcotic drugs, was unbroken. The officer who took possession of the drugs personally delivered them to the police station where the material—as immediately packaged, labelled and placed in a safe by this same officer and an Officer Bryant. This labelled package was removed by Officer Bryant, who personally delivered the package to the Crime Laboratory. Since the chain of custody appears unbroken, there can be no attack on the laboratory report on the basis that the drugs identified were not the materials seized. See, *United States v. Clark,* 425 F. 2d 827 (3d Cir. 1970), *cert. den.* 400 U.S. 820; *Commonwealth v. Cromartie,* supra.

Judgments of sentence are affirmed.