418 A.2d 382

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Samuel WATSON.**

Superior Court of Pennsylvania.

Submitted Oct. 26, 1978.

Filed Jan. 11, 1980.

234

Robert L. Eberhardt, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant.

J. Roi Jones, Pittsburgh, for appellee.

Before PRICE, HESTER and WATKINS, JJ.

PRICE, Judge:

This Commonwealth appeal arises from the order of the trial court dismissing the complaint against appellee at CC7704588A.[1]  For the reasons stated herein, we reverse that order and remand for a new trial.

The pertinent facts are as follows.  At trial, Deputy Sheriff Willie Bowman testified that on November 18, 1976,

[1]  Three informations were filed against appellee, each relating to a separate offense.  In the one now under consideration, No. CC7704588A, he was charged with conspiracy (18 Pa.C.S. § 903), and possession, possession with intent to deliver, and delivery of a controlled drug (heroin) (The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P. L. 233, No. 64 § 13, *as amended*, 35 P. S. § 780–113) in connection with a sale of the drug to a Narcotic Task Force agent on November 18, 1976.  These same charges were filed against appellee in No. CC7704589A as a result of another sale to a different agent on February 25, 1977.  Finally, No. CC7704590A again charged appellee with the identical crimes, save conspiracy, arising out of an October 15, 1976 sale of heroin.

Appellee was ultimately granted a mistrial with respect to the latter two informations, although his motion to dismiss was denied.  An appeal was filed in the supreme court from the order, transferred to this court at No. 926 April Term 1978, and subsequently nolle prossed due to appellee's failure to file a brief.

he was assigned to the Drug Enforcement Administration. On that date, agent Bowman went to Singer's Tavern in Pittsburgh's North Side accompanied by an informant named "Bonnie". The latter introduced agent Bowman to one Ronald Scott, who asked the agent if he were the individual who was to make a heroin purchase. Agent Bowman answered affirmatively and indicated that he would require three teaspoons, but when asked to quote a price, Mr. Scott could only respond that he would have to discuss it with appellee. Mr. Scott then went to the rear of the tavern, and, beyond the agent's hearing but within his field of vision, spoke with appellee. Upon the former's return, he requested that agent Bowman accompany him to the men's room. There, Mr. Scott stated that appellee demanded $750 for all three spoons, a price to which Agent Bowman acceded. The agent handed Mr. Scott $750 in official funds and seated himself briefly in the tavern. Five minutes later, Mr. Scott returned, again requested agent Bowman's presence in the men's room, and there handed him three teaspoons of what appeared to be heroin. Following the transaction, the agent searched out appellee in the bar and informed him that in the event any further purchases were made, he wished to deal directly through him. The latter refused and retorted that any future dealings would have to be made through either Mr. Scott or "Bonnie". Following this, agent Bowman and "Bonnie" departed. Agent Bowman then met with two other agents who tested the substance and positively identified it as heroin.

After agent Bowman testified to this transaction, identified appellee in court as the same individual who had been in the tavern, and recounted the lab results, he was shown a brown paper bag by the assistant district attorney, William R. Haushalter, Esquire, that bore the identification number D277–X–203. The witness opened the bag and identified its contents as the substance he had received from Mr. Scott. The prosecuting attorney then offered the exhibit into evidence and resumed his questioning. Prior to answering any further questions, however, agent Bowman requested to

re-examine the evidence. Mr. Haushalter complied and the witness privately informed him that the exhibit was not the bag he had received from Mr. Scott, as there were six, not three, packets contained therein.[2] Mr. Haushalter asked two further questions concerning surveillance, and then asked the witness to re-identify the exhibit, at which time agent Bowman stated on the record that the packet was not that which he had received in Singer's Tavern. Appellee's counsel immediately moved for a mistrial and dismissal of the information because of the admission of the erroneous contraband. At side bar, the prosecuting attorney explained that the mistake had occurred because the agent who brought the contraband to the courtroom had retrieved the evidence for case No. 277–X–203 (an unrelated matter), instead of that for No. 276–X–203 (the instant case), and that the latter remained in the evidence locker. After further argument, the trial judge granted the requested relief by dismissing No. CC7704588A. The Commonwealth now argues that the dismissal of the charge was too extreme a remedy under these circumstances. We agree.

■ The trial court granted the dismissal because "the Commonwealth failed to prove a corpus delicti in that the first necessary element, that a crime had in fact been committed was not proved." (Opinion at 2). Such a conclusion was not only erroneous, but precipitate for several reasons. First, the Commonwealth had not yet rested its case, and it would have been a simple matter to call a recess and permit retrieval of the proper evidence. Indeed, were this done, it might well have been feasible to avoid calling a mistrial. A prompt cautionary admonition to the jury instructing them to disregard the proffered evidence would have sufficed. The exhibit actually introduced was hardly of the type to irretrievably prejudice appellee in the eyes of the jurors. This was not a case of a prosecutor intentionally introducing, for example, a bloody picture of the defendant's victim, or a weapon which had no nexus to the crime. *See,*

2. Agent Bowman related this in-court conversation during a hearing held on December 9, 1977.

*e. g., United States v. Kessler,* 530 F.2d 1246 (5th Cir. 1976). Here, the visual appearance of the improper bag was very similar to the evidence intended for trial. Indeed, agent Bowman's initial identification of the proffered evidence highlights this minimal difference in a nondescript exhibit. While it is true that curative instructions may not always dispel the potential prejudice resulting from the introduction of irrelevant material, it is difficult to believe that a relatively innocuous mistake as was here made could not have been thereby corrected.

Moreover, the erroneous introduction did not irrevocably taint the later introduction of the true evidence. During trial, the court expressed concern over a possible chain of custody problem, and had there been a missing link in the custody chain, dismissal would have been a proper remedy. *See Commonwealth v. Pedano,* 266 Pa.Super. 461, 405 A.2d 525 (1979). A severance of that chain necessarily imports the presence of an unexplained period in an exhibit's course from discovery to display at trial. Consequently, were that evidence the only evidence supporting a conviction, dismissal would be justified. Instantly, quite aside from the fact that the physical evidence was not the only evidence adduced, it is clear that no chain was broken because the evidence inadvertently introduced was not a "link" in the chain of the proper evidence. The latter, presumably, remained intact, and the Commonwealth should have had the opportunity to demonstrate as much.

Further, dismissal would still not have been warranted even were we to assume that introduction of the improper bag precluded the later offer into evidence of that bag actually procured in the drug transaction. In *Commonwealth v. McGlory,* 226 Pa.Super. 493, 313 A.2d 326 (1973), the defendant argued that his conviction for possession and sale of narcotics could not be sustained solely on the basis of oral testimony and scientific documentation when the actual

contraband could not be introduced due to its destruction following a crime lab analysis. In affirming that conviction, we noted as follows:

"In the instant case, the appellant was given full latitude to cross-examine the prosecution witnesses and attack any portion of the laboratory report. There are no cases in this Commonwealth that require the production of tangible physical evidence, and 'there exists no such rule as expounded by the defendant which would automatically necessitate his acquittal upon the Commonwealth's failure to produce physical evidence shown to be unavailable.' *Commonwealth v. Cromartie,* 222 Pa.Super. 278, 280, 294 A.2d 762, 763 (1972); see also, *Commonwealth v. Gazal,* 185 Pa.Super. 91, 137 A.2d 814 (1958).

The fact that the inability of the Commonwealth to produce physical evidence in some cases would not serve as a basis for a reversal of a conviction does not mean that the Commonwealth does not have a burden in establishing the unavailability of the evidence and that the testimony is based upon an unbroken chain of events supporting the validity and connection to the evidence thereof. While the Commonwealth was unable to produce the drugs themselves because of inadvertent destruction of the evidence, the chain of custody, starting with the seizure of the materials from the appellant and leading up to the analysis of the material by the Crime Laboratory, which identified the material as narcotic drugs, was unbroken. The officer who took possession of the drugs personally delivered them to the police station where the material— as immediately packaged, labelled and placed in a safe by this same officer and an Officer Bryant. This labelled package was removed by Officer Bryant, who personally delivered the package to the Crime Laboratory. Since the chain of custody appears unbroken, there can be no attack on the laboratory report on the basis that the drugs identified were not the materials seized. See, *United States v. Clark,* 425 F.2d 827 (3d Cir. 1970), *cert. den.* 400

240

U.S. 820, 91 S.Ct. 38, 27 L.Ed.2d 48; *Commonwealth v. Cromartie,* supra." *Id.,* 226 Pa.Super. at 498, 313 A.2d at 329.

Instantly, a lab test that found the contraband to be heroin was properly introduced into evidence, and agent Bowman testified to this same effect. If the Commonwealth were denied the actual physical evidence—with legal unavailability being tantamount to physical destruction—the preceding testimony would have been sufficient to sustain a conviction.

■■■ Finally, if we were to concede, *arguendo,* that a mistrial was proper, a retrial, and not a dismissal would be in order. It is well recognized that when a mistrial is granted on a defendant's motion, or with his consent, a subsequent reprosecution is not barred. *See, e. g., United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion); *Commonwealth v. Bolden,* 472 Pa. 602, 373 A.2d 90 (1977). A second trial is barred by the double jeopardy clause only when prosecutorial overreaching is involved. As our supreme court stated in *Commonwealth v. Potter,* 478 Pa. 251, 386 A.2d 918 (1978):

"[T]he public interest in convicting those guilty of crimes is too important an interest to be subordinated to a concept of a prosecuting attorney's negligence, even though it be labeled 'gross'; defendants are adequately protected by the sanction of complete discharge which is imposed when the government's agent acts with the intent to abort the trial. Accordingly, we believe that retrial should be barred when there is found to have been prosecutorial misconduct 'intended to provoke mistrial requests,' *Dinitz, supra,* 424 U.S. at 611, 96 S.Ct. 1075, that is to say, when the prosecuting lawyer, judged by an objective standard, must be deemed to have been substantially certain that a mistrial would be declared as a result of his questions to witnesses or other conduct at trial." *Id.,* 478 Pa. at 267, 386 A.2d at 925–26 (Opinion in Support of Affirmance) (footnote omitted).

Although *Potter* involved an equally divided court, we have just recently reviewed that opinion and concluded that a majority of our supreme court now believes that unintentional overreaching, even in the form of gross negligence, will not bar a retrial. *Commonwealth v. Perry*, 270 Pa.Super. 412, 411 A.2d 786 (1979).[3] *See Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979).

■ In the present case, there is no evidence that the prosecutor intended to provoke a mistrial request. The trial court recognized that "the conduct here was unintentional on [the] part of the Commonwealth attorney and although there was negligence in presenting the wrong evidence, it cannot be said to amount to *gross negligence* after considering all the circumstances of the conduct here involved." (Opinion at 4) (emphasis in original).

We agree. The assistant district attorney was certainly lax in examining the evidence packet prior to showing it to the witness and offering it into evidence, and he should have immediately informed the court of the error upon receiving that information from agent Bowman. Nevertheless, he provided the agent with an opportunity to re-identify the evidence in open court and offered to procure the correct exhibit packet during a recess. The prosecutor's response was dilatory, but hardly fatal.

Moreover, there was simply no reason to intentionally place the improper evidence before the jury. The exhibits were similar and neither possessed any particular emotional value. We do not believe the prosecutor disingenuous when he informed the trial judge that the error had been inadvertent.

Consequently, we reverse the order of the trial court dismissing CC7704588A and remand the cause for proceedings consistent with this opinion.

**3.** Of the six justices participating in the consideration of *Potter*, four justices, (those in the opinion in support of affirmance plus Justice Nix) opined that gross negligence was not the proper standard by which to adjudge prosecutorial error.