480 A.2d 254

**COMMONWEALTH of Pennsylvania**

**v.**

**Gregory BULLING, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 18, 1983.

Filed June 29, 1984.

86

88

Ronald Segal, Philadelphia, for appellant.

Ronald Eisenberg, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CAVANAUGH, ROWLEY, and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant challenges: (1) the four extensions of the Rule 1100 rundate; (2) the sufficiency of the evidence; (3) the lower court's denial of his suppression motion; and (4) the lower court's decision to allow a Commonwealth witness to testify as an expert. Because we find all of appellant's claims meritless, we affirm the lower court's judgment of sentence.

On December 13, 1979, appellant was arrested and charged with possession with intent to deliver and delivery of a controlled substance and conspiracy, after police observed appellant receive two credit cards in exchange for a small plastic packet later found to contain heroin. A preliminary hearing was originally scheduled for December 24, 1979, however, on that date the first in a long series of delays occurred which were to characterize the procedural history of this case. Eventually, on June 3, 1981 a hearing was held on appellant's motion to suppress evidence, namely, the credit cards and packet of heroin. Immediately following the hearing, and the denial of appellant's suppression motion, a non-jury trial commenced. At the conclusion of trial, appellant was found guilty on all charges. Post-verdict motions were timely filed and denied. On November 5, 1981 appellant was sentenced to two concurrent

prison terms of three-to-twenty-three months. This appeal followed.[1]

Appellant alleges that the time for trial was improperly extended, pursuant to Pa.R.Crim.P. 1100(c), on four separate occasions. However, before turning to the four Rule 1100 extensions in the present case, we must first consider some of the principles applicable to Rule 1100 extensions in general. Under Rule 1100(c), the Commonwealth may be granted an extension of time for trial if a court finds that trial cannot be commenced within the prescribed period despite the exercise of due diligence by the Commonwealth. Pa.R.Crim.P. 1100(c); *Commonwealth v. Sharp*, 287 Pa.Superior Ct. 314, 430 A.2d 302 (1981). But, the Commonwealth bears the burden of showing, by a preponderance of the evidence, that it has acted with due diligence, and has thereby complied with the mandate of Rule 1100(c). *Commonwealth v. Ehredt*, 255 Pa.Superior Ct. 84, 386 A.2d 147 (1978); *Commonwealth v. Jenkins*, 248 Pa.Superior Ct. 300, 375 A.2d 107 (1977). When we review a lower court's ruling, relative to whether the Commonwealth has met its burden of proving due diligence, we only consider the evidence presented at the hearing by the Commonwealth and so much of the evidence presented by the defendant which remains uncontradicted. *Commonwealth v. Sharp, supra; Commonwealth v. Sinor*, 264 Pa.Superior Ct. 178, 399 A.2d 724 (1979). In summarizing the relevant procedural history of the instant case, we note that a criminal complaint was filed against appellant on December 13, 1979, making the original Rule 1100 rundate June 10, 1980. However, pursuant to four Commonwealth extension petitions, the time for trial was successively extended to August 25, 1980; January 20, 1981; March 24, 1981; and June 4, 1981. On June 3, 1981, appellant was tried and found guilty on all charges.

1. Despite appellant's conviction, the lower court refused to increase the amount of appellant's $500 bail. Consequently, appellant remains free on bail pending resolution of this appeal.

With the foregoing facts and principles in mind, we shall now address appellant's challenge to each of the four extensions *seriatim:*

## I. *The Extension from June 10, 1980 to August 25, 1980*

On June 3, 1980, a Commonwealth extension petition was timely filed pursuant to Rule 1100(c). A hearing on this petition was held before the Honorable Ned L. Hirsh on June 26, at which time Judge Hirsh granted the petition and extended the time for trial until August 25, 1980. Although the record does not contain a transcript of the June 26 extension hearing,[2] we are able to conclude that the Commonwealth's first extension petition was properly granted. This Court has previously held that the Commonwealth need not prove that it acted with due diligence on prior trial or hearing dates for which a Rule 1100 extension was not sought. *Commonwealth v. Tann,* 298 Pa.Superior Ct. 505, 444 A.2d 1297 (1982); *Commonwealth v. Sharp, supra.* Rather, the relevant inquiry at the extension hearing is whether the Commonwealth demonstrated due diligence at the last listing before the rundate at which it was unable to bring appellant to trial. *Commonwealth v. Tann, supra; Commonwealth v. Sharp, supra.* Here, the final listing prior to the original June 10, 1980 rundate was May 13, 1980. On that date, a preliminary hearing was held at which the Commonwealth established a prima facie case against appellant.[3] Following the preliminary hearing, appellant filed a motion to quash return of the transcript. *See* Pa.R.Crim.P. 306, 307. It would be unreasonable and unrealistic to expect that this motion could have been litigated

2. Our repeated attempts to obtain a copy of this transcript from the Clerk of Court of Philadelphia County were unsuccessful. Thus, we are forced to conclude that this transcript cannot be produced.

3. We note that there were six continuances prior to the May 13 preliminary hearing: two were joint continuances, one was caused by the unavailability of defense counsel, two were the result of Commonwealth witnesses failing to appear, and one was caused by the Commonwealth's need for a drug analysis.

and appellant brought to trial after the May 13 preliminary hearing, but before the June 10 rundate. Indeed, it was not until July 3, 1980, that appellant's motion to quash return of the transcript was denied. Therefore, we must agree with the Commonwealth that, while it was unable to try appellant by the original rundate, it diligently advanced toward trial by timely establishing a prima facie case at the preliminary hearing. Accordingly, we find that the Commonwealth exercised due diligence prior to June 10, 1980, and that its first extension petition was, therefore, properly granted.

Subsequent to the granting of the Commonwealth's first extension petition, appellant executed two written waivers of the Rule 1100 rundate. *See* Pa.R.Crim.P. 1100(d)(2).[4] The first waiver, executed on August 12, 1980, extended the time for trial to September 17, 1980; the second one was executed on September 17, and extended the trial deadline to November 22, 1980.

II. *The Extension from November 22, 1980 to January 20, 1981*

■ On November 21, 1980, the Commonwealth timely filed its second extension petition. The Honorable Ethan Allen Doty presided at an evidentiary hearing on this petition on December 30, 1980. In considering whether the Commonwealth had exercised due diligence, Judge Doty effectively took judicial notice of the uncontested notation of a prior hearing judge who, on November 18, 1980 (the last trial listing before the November 22 rundate), certified "Arresting officer ill." (N.T. December 30, 1980 at 6). Based upon this uncontested notation, Judge Doty appar-

4. Pa.R.Crim.P. 1100 provides, in pertinent part, as follows:
 (d) In determining the period for commencement of trial, there shall be excluded therefrom:
 . . . .
 (2) any period of time for which the defendant expressly waives Rule 1100[.]
 Here, because appellant effectively waived the Rule 1100 rundate from August 12 to November 22, 1980, the Commonwealth's November 21, 1980 extension petition was timely filed.

ently found that the Commonwealth's diligent efforts to try appellant prior to the rundate were thwarted by circumstances beyond the Commonwealth's control. *See Commonwealth v. Tann, supra* (where unavailability of Commonwealth witness was beyond Commonwealth's control, it was reversible error not to grant Commonwealth's extension petition); *accord, Commonwealth v. Sharp, supra.* Accordingly, Judge Doty granted the Commonwealth's extension petition and extended the Rule 1100 rundate to January 20, 1981. Thus, in deciding whether the grant of the Commonwealth's second extension petition was proper, the question we must address is: may a court effectively take judicial notice of uncontested notations in the court record in determining whether the Commonwealth has exercised due diligence in accordance with Rule 1100(c)? We believe that this Court's recent decisions in *Commonwealth v. Harris,* 315 Pa.Superior Ct. 544, 462 A.2d 725 (1983) and *Commonwealth v. Bright,* 303 Pa.Superior Ct. 98, 449 A.2d 596 (1982), have resolved the issue. In *Harris,* the defendant's trial date was listed nine days beyond the Rule 1100 rundate, due largely to the unavailability of criminal courtrooms and the recusal of the first two judges to whom the case had been assigned. Consequently, the Commonwealth timely filed a petition for a Rule 1100 extension. In response thereto, the defendant petitioned to dismiss the charges under Rule 1100(f). Following a hearing, the lower court extended the Rule 1100 rundate. The granting of this extension was based almost exclusively on the lower court's decision to take, in effect, judicial notice of the uncontested notations in the court record which revealed the reasons for the delay. The lower court in *Harris* concluded, based on the uncontested notations in the record, that the Commonwealth had exercised due diligence in attempting to bring the accused to trial. However, these uncontested notations were accepted as true by the lower court when it *impliedly* took judicial notice of same. A review of the transcript of

the extension hearing in *Harris* discloses the following exchange: [5]

THE COURT: .I have 2-6 normal run date of 8-6.

.Commonwealth petition filed 7-17. Timely filed.

.2-13 to 2-22, voluntary defender unprepared. Less than 30 days.

.Not chargeable, 4-19 5-30, wrong defendant brought down.

.5-30—7-13, motion to suppress denied. Judge Cipriani recused himself.

.7-13—8-15, Judge Shiomos recused himself had defendant previously on a jury trial.

.It would appear that there are three court continuances and one defense continuance. No Commonwealth continuance, as far as I can ascertain from this record.

[PUBLIC DEFENDER]: .Your Honor, our indication for July 13, is that Judge Shiomos recused himself upon the advice of the district attorney who advised him that he had had the defendant prior.

THE COURT: Well, nevertheless, it was Judge Shiomos' decision. It wasn't a Commonwealth continuance, it was Judge Shiomos who continued it.

[ASSISTANT DISTRICT ATTORNEY]: .We were ready on call.

[PUBLIC DEFENDER]: .We also moved in this case to relist the case.

THE COURT: .Well, again, that would be the court's fault.

.Based on the entire record I will find due diligence. The listing is now 8-15. We will make it August 17.

(*Harris*, N.T. August 2, 1979 at 2-3). The statement: "Based on the entire record I will find due diligence," was interpreted by our Court to mean that the lower court had taken judicial notice of the notations in the record and thereby found that the Commonwealth had exercised due diligence. Therefore, while acknowledging that "mere as-

---

5. The numbers to which the court refers are references to months and days. For example, "2-6" should be read as February 6.

sertions of due diligence and unproven facts do not establish cause for an extension under Rule 1100(c)," *Commonwealth v. Harris, supra* 315 Pa.Superior Ct. at 551, 462 A.2d at 729, *quoting Commonwealth v. Antonuccio*, 257 Pa.Superior Ct. 535, 536, 390 A.2d 1366, 1367 (1978), the *Harris* Court held that, "[A] hearing court may properly take judicial notice of uncontested notations in the court record in deciding . . . whether the Commonwealth exercised due diligence in attempting to bring an accused to trial. . . ." *Commonwealth v. Harris, supra* 315 Pa.Superior Ct. at 551, 462 A.2d at 729.

Similarly, in *Commonwealth v. Bright, supra*, the issue before our Court was whether a hearing judge could properly receive and consider uncontested notations appearing in the court record. *Bright*, like the instant case, involved a Rule 1100 extension hearing at which the defendant "offered no evidence at the hearing, and the Commonwealth only offered into evidence the record containing the notations made by the trial judge at the two previous listings of the case for trial." *Id.* 303 Pa.Superior Ct. at 101, 449 A.2d at 598. The notations in the record indicated that at one previous listing the complainant was on vacation, and at the other prior listing the arresting officer was on vacation. In holding that the notations in the record provided an adequate foundation for the decision of the hearing judge to extend the Rule 1100 rundate, the *Bright* Court observed that the use of notations in court records at Rule 1100 hearings had repeatedly been approved; *see Commonwealth v. Postell*, 280 Pa.Superior Ct. 550, 552, 421 A.2d 1069, 1070 (1980); *Commonwealth v. Gibson*, 248 Pa.Superior Ct. 348, 351–52 n. 5, 375 A.2d 132, 133 n. 5 (1977); *Commonwealth v. Kollock*, 246 Pa.Superior Ct. 16, 20 n. 5, 369 A.2d 787, 789 n. 5 (1977); *see also Commonwealth v. Jackson*, 269 Pa.Superior Ct. 249, 253–54, 409 A.2d 873, 875 (1979).

As in *Harris* and *Bright*, the hearing judge's decision in the present case, granting the Commonwealth's extension petition, was attributable solely to the fact that he accepted

as true the uncontested notation of a prior hearing judge who certified, "Arresting officer ill." (N.T. December 30, 1980 at 6). With regard to the alleged illness of the arresting officer on November 18, 1980, the hearing judge specifically stated, "The Court further finds as a fact that according to the certification of the trial judge, the arresting officer was ill on November 18 and the matter was continued to January 19, 1981." (N.T. December 30, 1980). Accordingly, the court at the second extension hearing concluded that the Commonwealth had "exercised due diligence in this matter." (N.T. December 30, 1980 at 9).

Therefore, in light of this Court's decision in *Harris* and *Bright,* and other cases cited above, we hold the grant of the second Commonwealth extension proper.

III. *The Extension from January 20, 1981 to March 24, 1981*

■ On January 19, 1981, the final listing before the January 20 rundate, a Commonwealth witness was ill. Consequently, on the following day, the Commonwealth timely filed its third extension petition. At an evidentiary hearing on February 13, 1981, before the Honorable John J. McDevitt, the Commonwealth's petition was granted and the rundate was extended to March 24, 1981. It is well settled that the illness of a Commonwealth witness may be a proper basis upon which to grant a Rule 1100 extension as the Commonwealth should not be penalized for events and circumstances which are wholly beyond its control. *Commonwealth v. Reihart,* 302 Pa.Superior Ct. 515, 449 A.2d 35 (1982); *Commonwealth v. Thompson,* 292 Pa.Superior Ct. Superior Ct. 108, 436 A.2d 1028 (1981); *Commonwealth v. Brown,* 252 Pa.Superior Ct. 365, 381 A.2d 961 (1977). Here, although appellant moved to dismiss the charges on January 26, 1981, pursuant to Rule 1100(f), the record reveals, and appellant does not dispute, that the Commonwealth was unable to proceed at the January 19 listing because of the illness of one of its witnesses. Accordingly, we hold that the undisputed illness of a Commonwealth witness provided

a legitimate basis for granting the Commonwealth's third extension petition.

### IV. *The Extension from March 24, 1981 to June 3, 1981*

■ On March 24, 1981, the Commonwealth timely filed its fourth petition for a Rule 1100 extension.[6] A hearing was scheduled for April 16, 1981,[7] before the Honorable Ned L. Hirsh. Although Judge Hirsh granted the Commonwealth's petition and extended the rundate to June 4, 1981, we find that appellant has waived his right to challenge the granting of this fourth extension petition. It is well established that the failure of an accused to file a written motion to dismiss under Rule 1100(f) or orally move to dismiss at the extension hearing in question "constitutes a waiver of the Accused's right to a speedy trial under Rule 1100". *Commonwealth v. Goldwire*, 279 Pa.Superior Ct. 451, 455, 421 A.2d 286, 288. With regard to the March 24 to June 3 period, appellant neither filed a motion to dismiss pursuant to Rule 1100(f) nor orally contested the petition at the April 16 extension hearing. (N.T. April 16, 1981 at 2–4). Accord-

6. The only listing after February 13, 1981 (when the third Commonwealth extension was granted), and before the March 24, 1981 rundate, was March 23. On that date, appellant failed to appear for trial and a bench warrant was issued. Clearly, the unavailability of appellant is not chargeable to the Commonwealth. *See* Pa.R.Crim.P. 1100(d)(3)(i). Subsequently, on March 30, 1981, appellant waived Rule 1100 to June 3, 1981.

7. We have repeatedly disapproved of the "practice of some courts of delaying consideration of a timely Rule 1100(c) petition until after the period has run." *Commonwealth v. Mancuso*, 247 Pa.Superior Ct. 245, 250 n. 3, 372 A.2d 444, 446 n. 3 (1977); *see Commonwealth v. Ray*, 240 Pa.Superior Ct. 33, 360 A.2d 925 (1976). As we commented in *Mancuso*, "The risk is obvious: if the court denied the extension after the period has run, the Commonwealth is prevented from bringing the accused to trial. If the petition is denied promptly, the Commonwealth may nonetheless be able to try the accused within the period." *Commonwealth v. Mancuso, supra*, 247 Pa.Superior Ct. at 250 n. 3, 372 A.2d at 446 n. 3. Presently, all four evidentiary hearings on the Commonwealth's extension petitions were held after the Rule 1100 period in question had run. However, because the four extension petitions, although timely filed, were not filed until the end of the various Rule 1100 periods, and because we hold that the four extensions were properly granted, the instant delays are excusable.

ingly, appellant's claim that the Commonwealth's fourth extension petition was improperly granted has been waived.

Appellant contends further that the evidence was insufficient to support his convictions.

The test for sufficiency of the evidence is whether accepting as true all of the evidence reviewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Lovette,* 498 Pa. 665, 669, 450 A.2d 975, 977 (1982); *see Commonwealth v. Ransome,* 485 Pa. 490, 493, 402 A.2d 1379, 1381 (1979). Specifically, with regard to proof of a conspiracy, we note that under 18 Pa.C.S.A. § 903 criminal conspiracy is defined, in pertinent part, as follows:

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(I) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime;

Thus,

The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished.... The crime by its very nature is frequently not susceptible of proof except by circumstantial evidence.... A conspiracy may be inferentially established by showing the relationship, conduct or circumstances of the parties, and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed.

*Commonwealth v. Carter,* 272 Pa.Superior Ct. 411, 414, 416 A.2d 523, 524 (1979) (citations omitted), *quoting Com-*

*monwealth v. Horvath,* 187 Pa.Superior Ct. 206, 211, 144 A.2d 489, 492 (1958).

█ With the foregoing principles in mind, we review the instant facts: on December 13, 1979, at approximately 6:15 p.m., Police Officer Robert Murdoch of the Philadelphia Highway Patrol and his partner observed appellant and two other men engaged in conversation on the corner of Franklin and Clearfield Streets in Philadelphia. Although it was dark and the officers were about 40 feet from appellant, their view was unobstructed and there was adequate lighting from street lamps. As the uniformed officers approached in their unmarked patrol car, one of the men walked away while appellant and the other man continued talking. Officer Murdoch then saw appellant exchange a small plastic packet for two credit cards given to him by the other man. At the time he witnessed the transaction, Officer Murdoch suspected that it involved the sale of illegal drugs; his suspicion was based on the fact that he had made more than 75 drug arrests and many of those had involved the possession or dispensation of illegal drugs in small plastic packets similar to the one used in the present case.[8] Immediately following the transaction, the officers exited their car and walked toward the two men. As the officers approached, appellant and the other man quickly parted company and dropped the items in question. Upon finding the credit cards[9] on the ground near appellant's feet and the plastic packet, containing a white substance, at the feet of appellant's cohort, both men were arrested. At trial the Commonwealth presented Officer Frederick Perkins, a chemical laboratory technician with 14 years practical experience, for the purpose of establishing the contents of the plastic packet. Although Officer Perkins testified

8. Unlike appellant, we do not find it significant that Officer Murdoch had never previously witnessed a drug transaction in which credit cards were used.

9. Neither of these two credit cards belonged to appellant or his cohort, and a subsequent investigation revealed them to have been stolen. However, the receiving stolen property charge against appellant was *nol prossed* prior to his arraignment.

that, although the results of the first kind of test he performed left open the possibility that the white substance was actually aspirin, his four other tests conclusively showed the substance to be heroin. Therefore based on the above facts, we hold that the evidence was sufficient to sustain appellant's convictions for possession with intent to deliver and delivery of a controlled substance and conspiracy.

However, appellant also seeks to attack his conspiracy conviction on the basis of Wharton's Rule [10] which holds that "An agreement between two persons to commit a crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require [sic] the participation of two persons for its commission." 1 R. Anderson, *Wharton's Criminal Law & Procedure* § 89, p. 191 (1957). *See Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). But as we pointed out in *Commonwealth v. Bucci*, 283 Pa.Superior Ct. 125, 127, 423 A.2d 747, 748 (1980), the rule is not to be "regarded as blackletter law," instead, it is to be viewed "merely as a presumption of law, to be applied in the absence of legislative intent to the contrary." Significantly, Pennsylvania courts have never chosen to follow Wharton's Rule for the reason that:

[O]ur courts have considered that a partnership in crime presents a greater potential threat to the public than individual behavior.

. . . .

Classic cases for application of Wharton's Rule were adultery, incest, bigamy and dueling—crimes where the parties to the agreement are the only persons who participate in the commission of the substantive offense and the immediate consequences of the crime rest on the parties themselves rather than on society at large. Thus the

10. Contrary to the Commonwealth's assertion, we find that appellant's allegations in his written post-trial motions, that the evidence was insufficient to support his conspiracy conviction and that his conspiracy conviction was contrary to law, were sufficient to preserve his "Wharton's Rule" issue.

agreement in those cases does not appear likely to pose the threats to society that the law of conspiracy seeks to avert.

*Id.*, 283 Pa.Superior Ct. at 127–128, 423 A.2d at 748–749. Moreover, Wharton's Rule is only applicable to situations where the substantive offense(s) which the accused conspired to commit, requires concerted criminal conduct. Here, appellant was charged and convicted of not only delivery of a controlled substance, but also possession with intent to deliver. Plainly, this latter crime is capable of being committed by a lone individual. *See United States v. Rueter*, 536 F.2d 296, 298 (9th Cir.1976) (because crime of possession with intent to deliver is "frequently committed by single person ... Wharton's Rule has no bearing."); *United States v. Bommarito*, 524 F.2d 140, 144 (2d Cir. 1975) ("agreements to distribute narcotics obviously involve grave dangers to persons who are not parties to the substantive offense, rendering inapplicable the rationale underlying Wharton's Rule."). Accordingly, we reject appellant's contention.

 Next, we must address the issue of whether appellant has standing to challenge the admission of the heroin and the credit cards into evidence. Following the suppression hearing, the lower court found that appellant lacked standing to challenge the admission of this evidence because he had relinquished his expectation of privacy in both the heroin and credit cards prior to his arrest.[11] How-

11. In *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983), the defendant was part-owner of an amusement arcade; he was arrested and charged with, *inter alia*, receiving stolen property after police, pursuant to a search warrant, uncovered stolen firearms in an area of the arcade which was equally accessible to all employees. Prior to trial, the defendant moved to suppress the fruits of the search on the ground that the search warrant was defective. The trial court found that the defendant had "automatic standing" to assert the illegality of the search and, upon determining that the warrant was indeed defective, suppressed the seized property. But the Superior Court disagreed, and held that the defendant lacked standing to challenge the validity of the warrant because he "did not entertain a reasonable expectation of privacy in either the premises searched ... or in the specific area where the stolen firearms were discovered." *Common-*

ever, appellant argues that he can: (1) attack the seizure of the heroin under the doctrine of "derivative standing," *see United States v. Westerbann-Martinez*, 435 F.Supp. 690 (E.D.N.Y.1977); and (2) attack the seizure of the credit cards because he was forced to abandon them by unlawful police activity and coercion. We disagree. In *Westerbann-Martinez*, the two defendants were stopped by drug enforcement agents at an airport where a search of one of the defendant's suitcases uncovered a packet of heroin. The court found that the other defendant had standing to challenge the search on the grounds that: (1) he was present at the time of the search; (2) both defendants were "seized" simultaneously; and (3) the arresting agent viewed the two

*wealth v. Sell*, 288 Pa.Superior Ct. 371, 381, 432 A.2d 206, 212 (1981). Following a grant of allocatur, our Supreme Court rejected the notion that one must have a "legitimate expectation of privacy" in the area searched or the items seized before one has standing to challenge the constitutionality of the search and/or seizure. *Contra Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (defendant had no legitimate expectation of privacy in his companion's purse which was searched and, thus, did not have standing to challenge the legality of the search, even though he claimed a possessor interest in the items seized); *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) (property ownership is only one factor to be considered in determining whether a person's Fourth Amendment rights have been violated relative to a search and seizure; for purposes of standing, the defendant's own Fourth Amendment rights must actually have been abridged); *accord Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Rather, the *Sell* Court held that the defendant had "automatic standing" to contest the admissibility of the items in question because "ownership or possession of the seized property is adequate to entitle the owner or possessor thereof to invoke the constitutional protection of Article I, section 8 [of the Pennsylvania Constitution] by way of a motion to suppress its use as evidence." *Commonwealth v. Sell, supra* —— Pa. at ——, 470 A.2d at 469. However, the Supreme Court's holding in *Sell*, while providing broader protection of individual rights under Article I, section 8 of the Pennsylvania Constitution than currently exists under the analogous Fourth Amendment of the Federal Constitution, does not aid appellant in the instant case. Whereas the defendant in *Sell* never relinquished his right of ownership, possession, or control in the seized property, here, appellant either sold or voluntarily abandoned the items in question prior to their seizure. As the *Sell* Court pointed out, "[P]ersonal possessions remain constitutionally protected under Article I, section 8 *until their owner meaningfully abdicates his control, ownership or possessory interest therein*." *Id.* (emphasis added).

defendants "as a unit." However, whereas the defendant in *Westerbann-Martinez* had not abandoned the seized property prior to his arrest, here, appellant's cohort had done just that. Clearly, an individual has no standing to assert his companion's Fourth Amendment rights where, as here, the companion himself would not have standing to challenge the seizure of the abandoned property. *See Commonwealth v. Shoatz,* 469 Pa. 545, 366 A.2d 1216 (1976). Furthermore, by selling the heroin, appellant voluntarily relinquished his possessory interest therein, thereby extinguishing his right to object to its seizure. *See Commonwealth v. Donnelly,* 233 Pa.Superior 396, 406, 336 A.2d 632, 637 (1975). Accordingly, we find that appellant lacks standing to challenge the seizure of the heroin.

 Insofar as appellant's abandonment of the credit cards is concerned, we recognize that physical evidence must be suppressed if its abandonment was coerced by unlawful police action. *Commonwealth v. Richardson, supra; Commonwealth v. Hall,* 475 Pa. 482, 380 A.2d 1238 (1977); *Commonwealth v. Shoatz, supra; Commonwealth v. Jeffries,* 454 Pa. 320, 311 A.2d 914 (1973); *Commonwealth v. Pollard,* 450 Pa. 138, 299 A.2d 233 (1973); *Commonwealth v. Williams,* 269 Pa.Superior Ct. 544, 410 A.2d 835 (1979); *Commonwealth v. Duncan,* 257 Pa.Superior Ct. 277, 390 A.2d 820 (1978); *Commonwealth v. Horsley,* 244 Pa.Superior Ct. 91, 366 A.2d 930 (1976). However, one does not have standing to attack a seizure of property that he has voluntarily abandoned. *Abel v. United States,* 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); *Commonwealth v. Metzger,* 295 Pa.Superior Ct. 267, 441 A.2d 1225 (1981); *Commonwealth v. Shoatz, supra; Commonwealth v. Richardson, supra; Commonwealth v. Williams, supra; Commonwealth v. Duncan, supra; Commonwealth v. Horsley, supra.* Thus,

> Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts.... All relevant circumstances existing at the time of the alleged abandonment should be con-

104.

sidered.... Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary.... The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search....

*Commonwealth v. Shoatz, supra* 469 Pa. at 553, 366 A.2d at 1220 *quoting United States v. Colbert,* 474 F.2d 174, 176 (5th Cir.1973) *(en banc)* (citations omitted); *see Commonwealth v. Sero,* 478 Pa. 440, 387 A.2d 63 (1978); *Commonwealth v. Metzger, supra.* Here, there was no evidence of any coercive or unlawful police action. Rather, Officer Murdoch testified that after he saw the exchange between appellant and the other man, he and his partner parked their car and started walking toward the two men. At that point, without being chased or ordered to halt by the police, appellant and his cohort simply dropped the items in question and began walking in opposite directions. Therefore, we find that appellant voluntarily abandoned the credit cards. *See Commonwealth v. Hall, supra* (defendant's dropping of heroin packets constituted voluntary abandonment where abandonment occurred after the "plain-clothes officers merely double-parked the unmarked automobile and approached [defendant]"); *Commonwealth v. Williams, supra* (no forced abandonment where defendant dropped stolen property upon seeing police); *Commonwealth v. Horsley, supra* (abandonment not forced where defendant spontaneously dropped bag of heroin when he sighted police approaching). Accordingly, we hold that appellant lacks standing to contest the seizure of the credit cards.

■■■■ Appellant asserts also that the lower court erred in denying his suppression motion on the ground that the police lacked probable cause to arrest him. "Probable cause exists where there are facts and circumstances within the arresting officer's knowledge and of which he had

reasonably trustworthy information sufficient in themselves to warrant a man of reasonable caution to believe that the suspect had committed a crime." *Commonwealth v. Wise,* 298 Pa.Superior Ct. 485, 489, 444 A.2d 1287, 1289 (1982). However, it is important to note that, "The standard of probable cause ... must be applied to the totality of the circumstances facing the police. Facts insufficient to justify an arrest if considered separately may in combination supply probable cause." *Commonwealth v. Kazior,* 269 Pa.Superior Ct. 518, 523, 410 A.2d 822, 824 (1979). Therefore,

> When we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element.... We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might.... Finally, we must remember that in dealing with questions of probable cause, we are *not* dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act. This is not the same 'beyond-a-reasonable-doubt' standard which we apply in determining guilt or innocence at trial.

*Commonwealth v. Simmons,* 295 Pa.Superior Ct. 72, 83, 440 A.2d 1228, 1234 (1982), *quoting Commonwealth v. Devlin,* 221 Pa.Superior Ct. 175, 178, 289 A.2d 237, 239 (1972) (emphasis in original). *See Commonwealth v. Lawson,* 454 Pa. 23, 309 A.2d 391 (1973) (probable cause to arrest where police observed individuals give money to appellant's husband, saw appellant remove a small item from her bosom and hand it to her husband who in turn transferred it to the waiting individuals, and where appellant fled toward ladies' room of nearby bar when police approached); *Commonwealth v. Horlsey, supra* (where police officer twice saw defendant take small metallic object from a paper bag and exchange it for money, where defendant dropped paper bag when he saw police approaching, and

where police opened bag and discovered several tinfoil packets containing white powder, police had probable cause to arrest); *Commonwealth v. McGlory*, 226 Pa.Superior Ct. 493, 313 A.2d 326 (1973) (police noticed appellant receive money in exchange for articles in vials and cigarette packs and, as they approached, one of the "buyers" fled while appellant frantically tried to empty contents of a vial; police had probable cause to arrest). Based on our foregoing recitation of the instant facts, we find that the police had probable cause to arrest appellant.

Lastly, appellant contends that it was error for the lower court to permit Officer Frederick Perkins to testify as an expert regarding the nature of the white substance contained in the plastic packet. Specifically, appellant claims that the fact that Officer Perkins does not have a degree in chemistry and had only taken elementary chemistry courses in college makes him unqualified to testify as an expert in the field of chemical analysis. The issue of a witness' qualification to render an expert opinion rests in the sound discretion of the trial judge, whose decision thereon will not be reversed absent a clear abuse of that discretion. *Commonwealth v. Mangini*, 478 Pa. 147, 386 A.2d 482 (1978). In *Commonwealth v. Daniels*, 280 Pa.Superior Ct. 278, 421 A.2d 721 (1980), the defendant apparently challenged the expert qualifications of the same Officer Perkins to testify concerning the identification of heroin. In rejecting the defendant's argument, this Court commented that, "An expert may be qualified in several different ways. An expert may acquire his knowledge through occupational, practical, or other experimental training. *He is not required to acquire his expertise through academic training.*" *Id.*, 280 Pa.Superior Ct. at 287, 421 A.2d at 726 (emphasis added). As previously noted, at the time of trial, Officer Perkins had 14 years of practical experience as a police chemical laboratory technician. His experience included the identification of controlled substances for nearly two years, and the performance of more than 10,000 tests of suspected controlled substances. In addition, he had

lectured and trained new technicians in the field of chemical research. Accordingly, we find that the lower court did not abuse its discretion by permitting Officer Perkins to testify as an expert.

Having found appellant's numerous contentions to be without merit, we affirm the lower court's judgment of sentence.

Affirmed.