## Commonwealth *v.* Lowery, Appellant.

362

Argued May 5, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Charles Jay Bogdanoff*, with him *Julian E. Goldberg*, for appellant.

*J. Bruce McKissock*, Assistant District Attorney, with him *James D. Crawford*, Deputy District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, October 9, 1970:
Appellant, Douglas Lowery, was arrested on March 14, 1965, for the murder of James Young, which killing

occurred earlier that day. He was tried before a judge and jury on March 29 through April 1, 1966. At the trial, the evidence introduced by the Commonwealth included testimony from an eyewitness, who was in the victim's company on the evening of his death, that appellant had approached Young, had a few harsh words with him and then pulled a gun and shot the victim twice. Other witnesses who were riding in a car with appellant immediately prior to the killing testified that when appellant saw Young walking in the street, he made derogatory comments about Young, stated that he would kill Young, took a gun from his wife, and left the car in pursuit of Young a few minutes before Young was killed. Another witness testified that several hours after the shooting, appellant arrived at the home of the witness and stated that he had just shot somebody. The jury returned a verdict of murder in the first degree and appellant was sentenced to life imprisonment.

No attack is made on the basis of the sufficiency of the evidence or error during the course of the trial, either during the presentation of the evidence, the closing statements or the court's charge to the jury. Instead, in the appeal from the denial of his posttrial motions, which had been delayed until April 8, 1969, due to dissatisfaction with various court-appointed counsel, appellant emphasized only the remarks of the district attorney, which, it is alleged, so tainted the trial wih constitutional error that for this reason alone, appellant is entitled to a new trial.

The following colloquy occurred during the district attorney's opening remarks: "MR. HECKSCHER [the district attorney] : Sir, could I briefly discuss the problem of premeditation with them? THE COURT: Yes, you may proceed on this. MR. HECKSCHER: I believe His Honor will charge you that where a killing is accomplished by premeditation, that that killing, such a killing is mur-

der in the first degree. For this reason, Ladies and Gentlemen of the Jury, I ask you to listen closely, particularly to the testimony that the Commonwealth will introduce which will show that well in advance of this brutal, senseless killing that this defendant had formed the intention and the design to do what he did. "I will also ask you to listen very closely to testimony from Commonwealth witnesses and from the defendant himself if he gets on the stand that will show this defendant's callous attitude not only towards the decedent, whom he brutally slayed [sic], but also towards all human life and the life which he had snuffed out. MR. MCCRUDDEN: Your Honor, this is objected to. THE COURT: Sustained. I think, Mr. Heckscher, at this juncture an outline of your case and what you proport [sic] to prove is the substance of your opening address. MR. MCCRUDDEN: Your Honor, it goes further than that now. There's a tendency on this, before trial even begun [sic], to attempt to prejudice the Jury, or any fact finder, against the defendant. What he's doing in effect is saying what his attitude is towards the defendant. I think it is a serious error and I think a Juror should be withdrawn because of it. THE COURT: Denied. MR. MCCRUDDEN: I think the Jury should be instructed to ignore what statements he made. THE COURT: Which statements? MR. MCCRUDDEN: With regard to the attitude of the defendant, not only towards the decedent, but towards the Police Department and others. MR. HECKSCHER: I didn't say the Police Department. MR. MCCRUDDEN: To others, you stated, human life. THE COURT: Members of the Jury, you will of course, concern yourselves only with testimony that comes from the witness stand. Statements made by counsel, either for the Commonwealth or Defense, are merely their statements and have no evidential weight as far as you are concerned. How counsel for the defendant or the Commonwealth classifies any of

that evidence is not testimony as far as you are concerned. Therefore, characterizations, as in this instance by the prosecutor, of this defendant's attitude towards others should be stricken from your mind. His attitude towards the deceased and that alone is the only issue before you."

Although counsel's objection at the time of trial concerned the district attorney's reference to appellant's personal character, appellant now emphasizes that particular part of the district attorney's remarks wherein he told the jury that they should listen closely to the testimony of "the defendant himself, *if he gets on the stand* that will show this defendant's callous attitude . . ." (Emphasis supplied.)

The appellant argues that this remark was equivalent to a comment on the failure of the appellant to take the stand in his own defense and was, therefore, an abridgment of the appellant's constitutional rights under the Fifth Amendment of the United States Constitution.

We do not agree. The objection of appellant's counsel at the time of trial was clearly not made on Fifth Amendment grounds. In our opinion, the fact that appellant's counsel did not make such an objection, rather than being indicative of incompetent counsel, as appellant now suggests, was instead a clear indication that neither the appellant nor his counsel believed that the quoted language in any way acted as a challenge to appellant to take the stand or was an adverse comment on his refusal to do so. Since neither the counsel for the appellant nor the trial judge perceived any such challenge being directed towards appellant, we do not believe that the jury, far less sensitive to such constitutional issues, could have perceived such a challenge either.

If, by the slightest chance, the suggestion of a possible adverse inference from the appellant's refusal to

testify was subtly created in the mind of a juror and still lingered after the three-day trial, it was no doubt erased by the court's instructions. The court charged as follows: "The failure of the defendant to take the witness stand and testify in his own behalf does not create any presumption against him. The fact that he did not take the witness stand in his own behalf cannot be weighed in the slightest degree against the defendant, nor should this fact enter into the discussions or the deliberations of the Jury in any way. The defendant is not obliged to take the stand in his own defense, and not taking the stand in his defense cannot be used and should not support any inference of any kind whatever. Even in the slightest degree it should not be part of your deliberations."

The cases cited by the appellant in support of his contention, *Commonwealth v. Zukovsky*, 324 Pa. 588, 188 Atl. 349 (1936), *Commonwealth v. Wilcox*, 316 Pa. 129, 173 Atl. 653 (1934), *Commonwealth v. Green*, 233 Pa. 291, 82 Atl. 250 (1912), and *Commonwealth v. Foley*, 24 Pa. Superior Ct. 414 (1904), involved comment by a district attorney in his closing statement rather than his opening remarks. Usually they referred to a specific piece of evidence which had been offered. Consequently, they carried a much greater impact. The likelihood that a defendant's Fifth Amendment right not to testify would be adversely affected was much greater.

In the instant case, however, no such likelihood exists. First, we do not believe a noticeable adverse inference was created. Second, if even the slightest trace of such an inference was suggested, it was erased by the three-day trial and the judge's charge. Third, if the district attorney's statement was error, considering the immense weight of evidence against the appellant and the very slight degree of chance which exists that any juror was affected by the district attorney's

remarks, the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18 (1967), *Commonwealth v. Padgett*, 428 Pa. 229, 237 A. 2d 209 (1968).

Judgment of sentence affirmed.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS.

I can only concur in the majority's result, for I believe this case is yet another instance where the majority demonstrates its inability to apply its basic and fundamental error "test" consistently.

Seemingly a comment by the prosecution on the defendant not taking the stand, even if it occurs at the outset of the trial, is an error in violation of the Fifth Amendment, and thus should be basic and fundamental. See *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229 (1965). However, previous applications of the doctrine by the majority have been uneven. Compare *Commonwealth v. Myers*, 439 Pa. 381, 266 A. 2d 756 (1970) (holding damaging error in charge could not be raised on appeal, since it was not objected to at trial) and *Commonwealth v. Scoleri*, 432 Pa. 571, 248 A. 2d 295 (1968) (holding that deprivation of right to assistance of counsel not basic and fundamental error and hence would not be considered for first time on appeal) with *Commonwealth v. Williams*, 432 Pa. 557, 248 A. 2d 301 (1968) (holding that unobjected to error in charge could be raised on appeal).

In my view, appellant has waived his right to challenge the district attorney's statement, because appellant did not object at the time of trial. The efficient and proper administration of justice dictates that this Court not consider issues on appeal which were not raised at trial when the trial court could have corrected the error had it been brought to that court's attention. See *Commonwealth v. Simon*, 432 Pa. 386, 248 A. 2d

289 (1968); *Commonwealth v. Scoleri,* 432 Pa. 571, 582, 248 A. 2d 295, 300 (1968) (concurring and dissenting opinion).

Mr. Justice JONES joins in this concurring opinion.