386 A.2d 482

**COMMONWEALTH of Pennsylvania**

v.

**Anthony Robert MANGINI, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued March 10, 1978.

Decided April 28, 1978.

148

150

Robert G. Huhta, Erie, for appellant.

Richard A. Hernan, Jr., Dist. Atty., Warren, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

LARSEN, Justice.

On February 12, 1976, Jason Jones was shot and killed in his room at Warren State Hospital. Appellant, Anthony Mangini, was arrested and charged with the homicide. On June 27, 1976, a jury determined appellant guilty of first-degree murder. Post-trial motions were denied and, on December 27, 1976, a sentence of life-imprisonment was imposed, from which judgment one of the two appeals is taken.

152

Following the conviction, but prior to sentencing, defense counsel filed a petition for a writ of error coram nobis (to correct errors of fact). That petition alleged that facts were brought to counsel's attention of which he was not previously aware, and that, had those facts been known at appellant's pretrial suppression hearing, the lower court would have ruled to suppress certain evidence which was ruled admissible. By order dated February 3, 1977, the lower court denied that petition and appellant appeals the denial. On March 23, 1977, we granted appellant's application to consolidate the two appeals.

Since this case involves a conviction for murder of the first-degree, we have an independent duty to review the sufficiency of the evidence. Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187. In reviewing the sufficiency of the evidence, we must view the evidence in a light most favorable to the verdict winner, in this case the Commonwealth. *Commonwealth v. Blevins*, 453 Pa. 481, 309 A.2d 421 (1973). The test to be applied is whether accepting as true all of the evidence, direct or circumstantial, and all reasonable inferences therefrom upon which, if believed, the jury could, properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the accused is guilty of the crime with which he is charged. *Commonwealth v. Pitts*, 450 Pa. 359, 301 A.2d 646 (1973).

In that light, therefore, the testimony at trial disclosed the following. At approximately 1:45 A.M. on February 12, 1976, the victim was found dead in his hospital bed. The death was caused by shot gun wounds of the chest. Commonwealth witness Floyd Crossley, a patient at the hospital occupying the same room as the deceased, testified that he saw appellant enter the room, shine a flashlight on the victim who was asleep, raise what he thought was a cane, aim it at the victim and fire two shots in succession. He further testified that appellant fled from his room in the direction of the day room, which was in the direction of the parking lot.

When state police arrived at the hospital shortly thereafter, they observed and photographed shoe prints leading from the exit door to the parking lot and tire tracks beginning where the footprints ended. These shoe and tire impressions were made in freshly fallen snow. At trial, Richard Greene, a state police identification officer, testified he compared the photograph of the shoe print with one of appellant's shoes and that, in his opinion, the print was made by appellant's shoe, which shoe had been seized pursuant to a search warrant. He further testified that upon comparison of the photograph of the tire imprint taken at the scene with ink impressions taken from a tire on a vehicle registered in the name of appellant's wife, the tire from said vehicle was the same tire which made the tracks in the snow at the scene of the homicide.

Appellant, an employee at the hospital, had been working in the area where the victim was found. The victim had appellant's telephone number written on a piece of paper found in his wallet, and appellant admitted knowing the victim. The evidence against defendant was clearly sufficient to prove his guilt beyond a reasonable doubt.

Appellant assigns as error the illegality of the search and seizure procedure in which his shoe and the tires from the car registered to his wife were seized. These items, among others, were seized pursuant to several search warrants issued on February 18, 1976. The search warrants recited the same statements of probable cause indicating that incriminating evidence of a crime would be found. The probable cause set forth in the warrants is stated as follows:

1. Tire imprints left at the scene are similar to imprints of the tires of the Chevrolet 2-door Sedan registered in the name of Betty R. Mangini, Tag No. 07044T.

2. Accessibility to the building where the criminal homicide occurred since both Betty R. Mangini and Anthony R. Mangini, as employees have keys for said building and both worked in the area of the crime.

3. Investigative interviews revealed familiarity of both Betty R. Mangini and Anthony R. Mangini with the victim.

4. Availability—both off duty at the approximate time the homicide occurred and both reside in the area.

5. Anthony R. Mangini and Betty R. Mangini are familiar with, and repeatedly used the door used by the perpetrator.

6. The phone number of the Mangini home to be searched on Valentine Run Road was found in the victim's wallet. The phone number is 757–8039.

7. The homicide resulted from firing of a shotgun.

8. Investigative interviews revealed that both Anthony R. Mangini and Betty R. Mangini are familiar with shotguns and firearms.

9. Said property to be seized was either used as a means of committing a criminal homicide or constitutes part of the evidence of the commission of a criminal offense—the homicide above recited.

10. Composite picture by eyewitness strongly resembles Anthony R. Mangini.

As noted in paragraph # 1 of the warrants, the state police noticed a similarity between the tire imprints found at the scene and the tires found on the vehicle registered in the name of Betty Mangini. This similarity was discovered by the police officers on February 17, 1976, the day before the warrants were issued. Testimony given at the suppression hearing establishes that state troopers, suspicious of appellant's possible connection with the victim and possible involvement in the homicide, decided to locate appellant's two vehicles and compare the tires with the photographs of the imprints found at the murder site. Aware that appellant's daughter often drove one of the vehicles to her high school and usually parked in the parking lot, the officers drove to the parking lot and there observed the vehicle registered to Mrs. Mangini. At that point, they looked at the tires of the vehicle and observed tread and groove patterns similar to

those of the imprint photographs. Neither the car nor its contents were seized at this time.

Appellant claims that this viewing of the tires of his wife's car was a violation of his Fourth Amendment guarantee against unreasonable searches and seizures because there was no probable cause existing at that time which would justify the warrantless "search" of the car.

Evidence presented at the suppression hearing demonstrated that the composite picture noted in paragraph # 10 of the search warrants was not received by the state troopers until the 18th of February. Therefore, the composite picture, and its resemblance to appellant, could not supply probable cause for the view of the tires made on the 17th. Without the composite pictures, appellant contends there was no probable cause for the "search" of the 17th because the other reasons listed in the search warrants were either speculative, conclusory or were applicable to numerous other people in the general area of the homicide. Appellant cites *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) for the proposition that probable cause must exist before a warrantless examination of the exterior of a car is permissible.

We find it unnecessary to resolve the issue of whether or not there was probable cause existing when police first viewed the tires in question because we conclude that such a view was not a "search" within the meaning of the Fourth Amendment.

In *Cardwell v. Lewis*, supra, police had suspected the defendant's involvement in a murder and had requested him to come to their office for questioning. Defendant Lewis complied with this request, drove his car to police headquarters and parked it in a public lot nearby. Later that day, Lewis was placed under arrest. Upon the arrest, Lewis' car keys and the parking lot claim check were released to the police who had the car towed to the police impoundment lot.

The impounded car was examined the next day by police personnel who found that a tire on the car matched a tire

impression found at the scene of the crime. Paint scrapings were also taken from the exterior of defendant's car and were determined to match paint scrapings found on the murder victim's car where it had been struck by another vehicle (defendant's).

On defendant's federal habeas corpus application, the district court concluded that the seizure and examination of his vehicle violated the Fourth and Fourteenth Amendments, and that the evidence obtained therefrom should have been excluded at trial. The circuit court of appeals affirmed.

In reversing the circuit court, the United States Supreme Court stated the issue as "whether the examination of an automobile's exterior upon probable cause invades a right to privacy which the interposition of a warrant requirement is meant to protect." *Id.* at 589, 94 S.Ct. at 2468. The Court focused its attention on the "essential purpose" of the Fourth Amendment which is to "shield the citizen from unwarranted intrusions into his privacy." *Id.*

Examining the recent cases involving searches of the interiors of vehicles, the U. S. Supreme Court noted that the search of automobiles is far less intrusive upon the rights safeguarded by the Fourth Amendment than the search of one's person or of a building. Given the function of a motor vehicle and its sphere of operations on public thoroughfares, a car has "little capacity for escaping public scrutiny . ." *Id.* at 590, 94 S.Ct. at 2469, and, therefore, the "expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Further, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Cardwell v. Lewis,* supra, 417 U.S. at 591, 94 S.Ct. at 2469 citing *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

In light of the acknowledged touchstone of the Fourth Amendment, i. e. to protect one's reasonable expectations of privacy, *Cardwell* held "[w]ith the "search" limited to the examination of the tire on the wheel and the taking of paint

scrapings from the exterior of the vehicle left in the public parking lot, we fail to comprehend what expectation of privacy was infringed. . . . Under circumstances such as these, where probable cause exists, a warrantless examination of the exterior of a car is not unreasonable under the Fourth and Fourteenth Amendments." *Cardwell v. Lewis,* supra 417 U.S. at 591–92, 94 S.Ct. at 2470.

Appellant would have us interpret *Cardwell* to absolutely require a demonstration of probable cause before a warrantless examination or viewing of an automobile could ever be found justified. While the "where probable cause exists" language quoted above might, if read alone, support this analysis of *Cardwell,* the Court's discussion of reasonable expectations of privacy, coupled with the circumstances of that case (the car was actually seized before any examination took place and paint scrapings were taken from its body), lead us to reject appellant's interpretation.

In the instant case, investigating officers did no more than observe the tires on Mrs. Mangini's vehicle which they found on a parking lot freely accessible to the public. They did not seize the car at that time, nor take any items therefrom. They did not search the interior of the car. Neither did they restrict the movement of the car in any way. In short, they simply observed that which had been placed in plain view by appellant's daughter in a location where they had a right to be, (public property). *Cf. Commonwealth v. Murray,* 460 Pa. 53, 331 A.2d 414 (1975) and *Commonwealth v. Jackson,* 461 Pa. 632, 337 A.2d 582 (1975) cert. denied, 423 U.S. 999, 96 S.Ct. 432, 46 L.Ed.2d 376 (1975). Prior to the seizure of any of appellant's effects, the officers obtained a search warrant from a neutral and detached magistrate, following proper procedures. See *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Under these circumstances, therefore, we hold that the mere viewing of the exterior of a vehicle in a public location is not a "search" because, in such a situation, there is no unconstitutional intrusion since there is no intrusion into an area in which there exists a reasonable expectation of privacy.

*Mancusi v. DeForte*, 392 U.S. 364, 368, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Since the viewing of the tires was not in violation of the Fourth Amendment, there is no doubt that the search warrants issued were sufficiently supported by probable cause under the standards enunciated by this Court. *Commonwealth v. Hall*, 456 Pa. 243, 249, 317 A.2d 891, 894 (1973). Therefore, the evidence seized pursuant to said warrants was properly admitted.

Appellant next argues that the lower court erred in refusing to grant a mistrial upon objection to the remarks made by the district attorney in his opening statement to the jury. At the opening of the trial, the district attorney made the following remarks:

"Now the Commonwealth opens and the Commonwealth will then put on all of its witnesses. The Defendant, through his counsel, has the right of cross-examination. At the conclusion of the Commonwealth's case, the Defendant may, if he desires, put in a defense. Then, after all of the testimony is in, each side will make a summation to you."

Appellant takes the position that these statements are "tantamount to calling to the jury's attention the fact that the Defendant may put in a defense by way of testifying . . . .", and that, somehow, this is equivalent to a comment by the prosecutor on the failure of the appellant to take the stand in his own defense, a comment which abridges his Fifth Amendment right not to testify.

We fail to see how the district attorney's comments could possibly have created an adverse inference regarding appellant's right to remain silent and not testify. In *Commonwealth v. Lowery*, 440 Pa. 361, 269 A.2d 724 (1970), the prosecution had made the following remark in his opening statement: "I will also ask you to listen very closely to testimony from Commonwealth witnesses and from the defendant himself if he gets on the stand." *Id.* 440 Pa. at 364,

269 A.2d at 725. We found that this remark did not create an adverse inference on defendant's failure to take the stand. *Id.* Here the opening statements of the district attorney, describing generally to the jurors the procedure that would take place, were even less likely to create an adverse impression regarding appellant's Fifth Amendment rights. Accordingly, the trial court's denial of appellant's motion for a mistrial was proper.

██ The next assertion of error contends that the lower court improperly refused a defense motion to allow the jury to view the scene of the crime at nighttime. Pa.R.Crim.P. 1112 permits the trial judge *in his discretion* to order a view by the jury. Absent an abuse of that discretion, the trial judge's decision not to allow a view, or to order the view at a time deemed proper by him, will not be overturned. *Commonwealth v. Sallade*, 374 Pa. 429, 434-35, 97 A.2d 528, 530 (1953). In the instant case, the court permitted a daytime viewing. In support of his denial of defense counsel's motion, the trial judge noted that numerous factors, some known and others not, contributed to the amount of illumination in the hospital room on the night of the murder and that it would be difficult to reconstruct the exact amount of lighting given the numerous variables. Under the circumstances here presented, appellant has failed to meet his burden of demonstrating an abuse of discretion by the trial judge.

It is also contended that the lower court erred in allowing testimony by Trooper Richard Greene regarding the comparisons he had made between the photographs of the shoe and tire imprints found at the scene of the homicide and the shoe and tire belonging to appellant. Specifically, appellant claims the Commonwealth did not properly establish Trooper Greene's qualifications to testify as an expert witness concerning comparisons and that no proper foundation had been laid for the admission of the photographs.

██ The question of the qualification of a witness to express an expert opinion is one for the discretion of the

trial judge whose ruling thereon will not be reversed absent an abuse of that discretion. *Commonwealth v. Smallwood*, 465 Pa. 392, 398, 350 A.2d 822, 825 (1976); *Commonwealth v. Bamber*, 463 Pa. 216, 219, 344 A.2d 799, 801–02 (1975). Trooper Greene testified that he had been an identification officer for four years. As such, his primary duty was identification and comparison of evidence. He had also attended a one week course in photography at the Eastman Kodak school in New York, a three week course in photography and comparison at Departmental Headquarters and a criminalistics course at Mercyhurst College in Erie which course included comparison of fingerprints, tire wear and clothing. On this record, the lower court did not abuse its discretion in permitting Trooper Greene to testify as an expert.

As to appellant's contention that no proper foundation was laid for the admission of the crime scene photographs, appellant asserts that since there were no identifying markings or signs placed on the photographs, it was not established that the photos in question were the same photographs taken at the scene. Although there were no markings on the photographs, Trooper Greene testified that he had taken the photographs at the scene, that he had developed them himself, that he had worked with the photographs for some time and was thoroughly familiar with them and that they had been in his possession from the time he took them until trial, except for a brief period in which he had furnished them to investigating officers.

Appellant has cited no support, nor do we know of any, for his proposition that the foundation laid for the admission of photographs can only be by way of markings or other identification signs. The trial court did not abuse its discretion in admitting these pictures. *Commonwealth v. Wentzel*, 360 Pa. 137, 148, 61 A.2d 309, 314 (1948).

It is next asserted that error occurred when the court allowed testimony by Trooper Joseph J. Azzato in rebuttal. Azzato had been called in the Commonwealth's

case in chief and testified extensively about the weather conditions and other aspects of the scene of the homicide on the night it occurred, including the shoe prints and tire impressions found in the snow. Appellant presented evidence that he had picked his wife up at the hospital some six and one-half hours prior to the shooting. This evidence would tend to explain, in a manner consistent with his innocence, why his shoe prints would be found in the snow.

In the rebuttal, Trooper Azzato testified, over objection, that the imprints had been found in fresh, new fallen snow and that, in his opinion, they could not have been made more than one-half hour before his arrival at the scene. While this testimony might properly have been received as part of the prosecution's case in chief, that fact does not necessarily preclude its use in rebuttal. "Evidence is admissible in rebuttal to contradict that offered by a defendant or his witnesses, even though by doing so the Commonwealth supplies previous omissions from its case in chief. . . . We have previously stated that the order of presentation of evidence is a matter of sound discretion for the trial court." *Commonwealth v. Tervalon*, 463 Pa. 581, 590, 345 A.2d 671, 676 (1975) (citations omitted); *Commonwealth v. Koch*, 446 Pa. 469, 478, 288 A.2d 791, 795 (1972). The trial court's ruling in this matter was correct.

Appellant also argues that the lower court erred in not declaring the Commonwealth eye witness, Jessie Floyd Crossley, incompetent as a matter of law. An in-chambers conference was held in which the court, defense counsel and the district attorney discussed the competency of Jessie Floyd Crossley, who was a patient at the Warren State Hospital when the homicide occurred, having been admitted for mental treatment. There is nothing in the record to indicate that an objection was made at trial or that a request to enter an objection on the record had been made at the in-chambers conference or elsewhere. Appellant maintains that he made such a request, but this was denied by the Commonwealth and by the trial judge. Because appellant did not object to the competency of this witness to

testify, the issue has been waived and will not be considered on appeal.

Finally, it is asserted that the lower court erred in not granting appellant's writ of error coram nobis. The facts leading to the petition for this writ are as follows: There were three suppression hearings held in this case. At the first on April 2, 1976, one of the investigating officers, Harry Jabo, testified that he believed the viewing of the car registered to Mrs. Mangini in the parking lot of her daughter's school took place on February 16, 1976. At the suppression hearing held on May 3, 1976, it was established that the actual date of this viewing was on February 17, 1976. Officer Jabo testified that the reason for his previously giving February 16th as the viewing date was that he had testified at the first hearing from memory and that after consulting with the other investigators and their notes, the viewing had, in fact, taken place on the 17th. Three other investigating officers also testified at the May 3rd hearing that the viewing took place on the 17th. These officers did not state that the date of the 17th was gleaned from notes or any source other than their own recollection.

Following appellant's conviction, appellant filed on December 6, 1976, a motion for a subpoena duces tecum requesting certain police records on file in state police headquarters in Harrisburg which records were prepared pursuant to the investigation of the homicide. The motion was granted and on December 27, 1976, after appellant was sentenced, these records were received and examined by the court and defense counsel. The records subpoenaed did not contain any reference to the viewing of the Mangini vehicle at their daughter's school. This fact, claims appellant, suggests that Officer Jabo deliberately misled the court at the second hearing in stating at that time that he had concluded the proper viewing date was the 17th of February based on his conference with the other investigators and their notes.

Appellant takes the position that the subpoenaed records disclosing the absence of any reference to the observation of the vehicle in question, reveal an error of fact which, had it

been known earlier, would have affected the suppression decision which allowed the introduction of certain evidence. The petition for the writ of error coram nobis was intended to correct that error by giving the lower court the opportunity to reconsider its suppression decision based on the supposed error of fact.

A writ of error coram nobis is a procedural tool whose "purpose . . . is to correct errors of fact only, and its function 'is to bring before the court rendering the judgment matters of fact which if known at the time the judgment was rendered, would have prevented its rendition.' " *Commonwealth v. Orsino,* 197 Pa.Super. 306, 313 14, 178 A.2d 843, 846 (1962), citing *Commonwealth v. Harris,* 351 Pa. 325, 327, 41 A.2d 688, 690 (1945). This remedy is, however, generally regarded as an extraordinary one. *Commonwealth v. Myers,* 419 Pa. 1, 11 n.15, 213 A.2d 613, 619 n.15 (1965); *Commonwealth v. Sheehan,* 446 Pa. 35, 40, 285 A.2d 465, 467 (1971); 10A P.L.E. Criminal Law § 852.

It is also generally accepted that the granting of a petition for such extraordinary relief is not proper unless the extrinsic facts were not only not discovered at the time of trial, but also not discoverable by the petitioner at such time by the exercise of due diligence. *Commonwealth v. Harris,* supra, 351 Pa. at 327, 41 A.2d at 691; *Commonwealth v. Matthews,* 356 Pa. 100, 51 A.2d 609 (1947); 10A P.L.E. Criminal Law § 852. Appellant maintains that he exercised all due diligence in this matter. Yet he did not make any attempt to secure the investigative notes referred to at the hearing on May 3, 1976 until the filing of the motion for subpoena duces tecum on December 6, 1976. This is hardly due diligence. Appellant was aware on May 3rd of the possibility that certain notes or reports might prove illuminating. Yet he made no effort to procure them for some seven months—some five months following the conclusion of the trial.

As we stated in *Commonwealth v. Harris, supra,* "when a party seeks to avail himself of [the writ of error

coram nobis], he must show that it was by no fault or negligence of his that the error in fact assigned was not made to appear at the former trial." 351 Pa. at 329, 41 A.2d at 691. Here, appellant has utterly failed to meet his requirement. The motion to subpoena the police records could have been filed at any time after May 3, 1976, when appellant became aware that the records might be useful. He asserts no reason for the seven month delay prior to the filing of the motion. Hence, the denial of the petition for the writ of error coram nobis was proper. Finally, we note that official records are not necessarily the same as investigative notes. Therefore, it would be fallacious to conclude that there was necessarily an inconsistency.

The judgment of sentence is affirmed. The order denying the petition for a writ of error coram nobis is affirmed.

ROBERTS and NIX, JJ., concurred in the result.