J-A10016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID HIGGINBOTHAM, | |
| Appellant | No. 7 WDA 2015 |

Appeal from the Judgment of Sentence November 13, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0017178-2013

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID HIGGINBOTHAM, | |
| Appellant | No. 250 WDA 2015 |

Appeal from the Judgment of Sentence November 13, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0017178-2013

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and SHOGAN, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED AUGUST 09, 2016**

Appellant, David Higginbotham, appeals from the judgment of sentence of an aggregate term of 20-40 years' incarceration, imposed following his conviction for twelve sexual offenses committed against two minor victims. Appellant alleges multiple claims of error regarding the trial court's permitting certain expert rebuttal testimony, the court's failure to

issue a proposed jury instruction, the court's imposition of an illegal sentence, and the court's improper grading of an offense. Appellant also contends that the trial court abused its discretion by imposing an ostensibly unreasonable sentence. After careful review, we vacate Appellant's sentence and remand for a new trial.

The trial court provided the following brief summary of the facts adduced at trial:

> [T]he evidence presented at trial established that Erika Higginbotham, the [Appellant]'s daughter-in-law, worked as a nanny to sisters [S.C. and E.C.], ages 13 and 12 at trial, respectively. During the summer months, Erika Higginbotham would take [S.C. and E.C.] to the [Appellant]'s home so they could swim in his pool. Beginning when [S.C.] was in 4th grade and [E.C.] was in 3rd grade, the [Appellant] would take the girls into his home office to play computer games. While in his office with the girls, the [Appellant] touched their breasts and vaginas, both over and under their clothes and made both girls touch his erect penis. Additionally, the [Appellant] would get in the pool with the girls, and would touch their breasts and vaginas both over and under their bathing suits. [S.C.] also testified that the [Appellant] licked her vagina and made her lick his penis.

Trial Court Opinion (TCO), 7/20/15, at 2.

Appellant was initially charged with seventeen offenses arising out of his sexual abuse of E.C. and S.C. Two of those charges were dropped immediately prior to trial.[1] Ultimately, following a jury trial ending on

---

[1] The Commonwealth withdrew one count of statutory sexual assault (graded as a first-degree felony), 18 Pa.C.S. § 3122.1(b), and one count of statutory sexual assault (graded as a second-degree felony), 18 Pa.C.S. § 3122.1(a).

August 28, 2014, Appellant was convicted of two counts of aggravated indecent assault of a child (AIAC), 18 Pa.C.S. § 3125(a)(1) & (b); two counts of unlawful contact with a minor (UCM), 18 Pa.C.S. § 6318(a)(1); two counts of indecent assault, 18 Pa.C.S. § 3125(a)(7) (person less than thirteen years of age); two counts of corruption of minors (graded as a third-degree felony), 18 Pa.C.S. § 6301(a)(1)(ii) (course of conduct); two counts of corruption of minors (graded as a first-degree misdemeanor), 18 Pa.C.S. § 6301(a)(1)(i); and two counts of indecent exposure, 18 Pa.C.S. § 3127. Appellant was acquitted of one count of involuntary deviate sexual intercourse, 18 Pa.C.S. § 3123(b), and two counts of statutory sexual assault.

On September 14, 2014, the Commonwealth filed notice of its intent to pursue two, ten-year mandatory minimum sentences pursuant to 42 Pa.C.S. § 9718 for Appellant's two convictions for AIAC. On November 10, 2014, Appellant filed a pre-sentence memorandum in response, arguing, *inter alia*, that Section 9718 was unconstitutional, and that several offenses were improperly graded based upon discrepancies between the criminal information and the charges put before the jury.

Sentencing was held on November 13, 2014. However, due to a dispute over whether a Sexually Violent Predator (SVP) status hearing would occur prior to sentencing (Appellant alleged that he was not afforded notice that the Commonwealth was seeking the designation), the SVP matter was

deferred until January 20, 2015. The trial court then sentenced Appellant to an aggregate term of 20-40 years' incarceration.[2]

Appellant filed a timely post-sentence motion on November 21, 2014, which was denied by the trial court on December 3, 2014. Despite the pending SVP hearing, Appellant cautiously filed a notice of appeal from the judgment of sentence on December 22, 2014, which was docketed in this Court as 7 WDA 2015. At the January 20, 2015 SVP hearing, the Commonwealth declined to pursue an SVP designation.[3] On January 29, 2015, Appellant filed a second post-sentence motion, which was substantively identical to the motion filed on November 21, 2014.[4] The duplicative post-sentence motion was denied by order dated February 5, 2015. Thereafter, on February 11, 2015, Appellant filed his second notice of appeal in this case, which was docketed by this Court as 250 WDA 2015.

---

[2] Appellant was sentenced to 5-10 years' incarceration for each of the two counts of UCM, and to 5-10 years' incarceration for each of the two counts of AIAC, and all sentences were ordered to run consecutive to one another. At all remaining counts, the trial court sentence Appellant to no further penalty.

[3] Appellant contends the Commonwealth was precluded from doing so because it "never filed any paperwork to schedule or to initiate an SVP determination hearing." Appellant's Brief, at 21. However, any such dispute is rendered moot given the Commonwealth's abandonment of the matter.

[4] Appellant was concerned because a substantial minority of members of this Court has expressed its belief that a sentence is not finalized for purposes of appeal until SVP proceedings are concluded. *See Commonwealth v. Masker*, 34 A.3d 841, (Pa. Super. 2011) (*en banc*) (Bowes, J. concurring and dissenting) (joined by Judges Donahue and Freedberg).

By order dated March 13, 2015, this Court *sua sponte* consolidated the appeals at 7 WDA 2015 and 250 WDA 2015. On March 20, 2015, Appellant filed a court-ordered, Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on July 20, 2015.

Appellant now presents the following questions for review:

I. WHETHER THE TRIAL COURT ERRED IN PERMITTING THE COMMONWEALTH TO INTRODUCE THE TESTIMONY OF A PHYSICIAN AS REBUTTAL EVIDENCE WHERE THE TESTIMONY DID NOT REBUT OR CONTRADICT ANY EVIDENCE PRESENTED BY [APPELLANT] OR HIS WITNESSES?

II. WHETHER THE TRIAL COURT ERRED BY NOT PRECLUDING THE EXPERT TESTIMONY AND OPINION OF A PHYSIC[I]AN WHERE THE COMMONWEALTH FAILED TO DISCLOSE THAT THE PHYSICIAN WOULD BE TESTIFYING AS AN EXPERT AND FAILED TO DISCLOSE HER EXPERT OPINION PRIOR TO TRIAL, RESULTING IN A DISCOVERY VIOLATION AND PREJUDICE TO [APPELLANT]?

III. WHETHER THE TRIAL COURT ERRED IN FAILING TO PROVIDE [APPELLANT]'S REQUESTED JURY INSTRUCTIONS ON (i) 23 Pa. C.S. § 6311 AND 49 Pa. Code § 41.71 AND (ii) UNLAWFUL CONTACT WITH MINORS AS WELL AS CORRUPTION OF MINORS?

IV. WHETHER THE TRIAL COURT ERRED BY IMPOSING MANDATORY MINIMUM SENTENCES UPON [APPELLANT] PURSUANT TO 42 Pa. C.S. § 9718, AN UNCONSTI[TUTI]ONAL STATUTE?

V. WHETHER THE TRIAL COURT ERRED IN GRADING [APPELLANT]'S CONVICTIONS FOR UNLAWFUL CONTACT WITH MINORS AS FIRST-DEGREE FELONIES?

VI. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING UNREASONABLE AND OUTSIDE THE AGGRAVATED RANGE SENTENCES FOR [APPELLANT]'S UNLAWFUL CONTACT WITH MINORS CONVICTIONS?

Appellant's Brief, at 10-11.

Appellant's first two claims concern the testimony of Dr. Jennifer Wolford. Dr. Wolford was the attending physician at the Division of Child Advocacy at Children's Hospital of Pittsburgh who examined E.C. and S.C. Appellant claims Dr. Wolford's testimony was not properly admitted as rebuttal testimony, and that it was not properly admitted as expert testimony due a purported discovery violation.

The admission of rebuttal testimony is within the sound discretion of the trial court, and the appropriate scope of rebuttal evidence is defined by the evidence that it is intended to rebut. **Commonwealth v. Ballard**, 80 A.3d 380, 401-02 (Pa. 2013). "It is not proper to submit on rebuttal, evidence which does not in fact rebut the opponent's evidence." **Commonwealth v. Hickman**, 309 A.2d 564, 567 (Pa. 1973).

Dr. Wolford did not testify during the Commonwealth's case-in-chief. Instead, Dr. Wolford was called as a rebuttal witness, over Appellant's vigorous and repeated objections, and essentially testified that it is rare that victims of sexual abuse present with physical symptoms of the abuse. Specifically, the pertinent and allegedly prejudicial portions of Dr. Wolford's testimony were as follows:

Q. Does the fact that the [victims'] exam[s] came back as normal surprise you?

A. Not at all.

Q. Why not?

A. We know that in the field of child abuse, which really in the realm of sexual abuse, that actually more than 95 percent of the

- 6 -

exams on children are normal. So for every 20 exams I would do, 19 of them would be normal.

Q. What are the reasons for that, if you can just explain to the jury?

A. Sure. So partially, so there's several reasons. The first one is that child abuse, typically child sexual abuse is not meant to hurt or to overpower or there isn't often a struggle, so there's less likely to be physical injury. Often the abuse is repeated and so by hurting the child or harming them, that would likely prevent further opportunity. Additionally, if there is penetration, we know that a woman's body is meant to stretch. And so even if there was penetration, that the body heals, that a woman's anatomy is set up for both things to enter and speaking about the vaginal area, as well as later in life to exit, such as birthing a baby.

Q. Doctor, if it's rare that there are physical findings, why do you still conduct these exams?

A. Well, the first reason is to make sure and the one in 20 times that there are any injuries, to make sure that these are healing properly. In some of the victims it's important that we do STD testing which was completed. But the most important reason is that we think that when you get to the part of the medical exam there's already been disclosure of the abuse. That could have gone on for long periods of time before that or a long time prior to the physical exam. So our point is really one of the most rewarding things I do in my field in that it's to remind these young girls that they're normal and that their bodies are okay. So I do a full physical exam, ears, eyes, mouth, and so that at the end I can say from the top of your head to the bottom of your feet you're okay. And I think that's really, we hope that it's one of the ways that victims can begin their healing and to know that they're okay.

Notes of Testimony, 8/25/14-8/28/14, at 255-257 (hereinafter "N.T.").

The trial court explained its decision to permit Dr. Wolford's rebuttal testimony as follows:

After the Commonwealth rested, [defense counsel] made statements to the media respecting the evidence presented by the Commonwealth, specifically that the Commonwealth

- 7 -

> presented no medical evidence and affirming [Appellant]'s innocence. Having already rested its case, the Commonwealth sought to call Dr. Wolford to discuss the absence of physical findings in her experience generally and in this case in particular.

TCO, at 3 (citation omitted). Thus, the trial court acknowledges that it admitted Dr. Wolford's testimony to rebut defense counsel's statements to the media.

The trial court does not identify which *evidence* Dr. Wolford's testimony was admitted to rebut, and it is obvious to this Court that a defense attorney's statement to the media does not constitute evidence. Furthermore, there is no evidence of record that the jury was even aware of counsel's media statement, nor does the trial court indicate that it engaged in any efforts to make such a determination. Moreover, the trial court does not cite to any legal authority suggesting that rebuttal testimony is permissible to respond to a party's out-of-court statements to the media. Indeed, the Commonwealth concedes that the trial court could not permit rebuttal testimony based solely on defense counsel's statements to the media. **See** Commonwealth's Brief, at 13 ("This attorney understands that the Commonwealth needs to be consistent in its arguments throughout the course of litigation but cannot bring himself to argue that a comment by the defense attorney to the media, where there is no evidence that the jury learned of the comment, can be the basis of the admissibility of this evidence."). This clear legal error was an abuse of the trial court's discretion. **See Commonwealth v. Jones**, 826 A.2d 900, 907 (Pa. Super. 2003) ("An abuse of discretion is not merely an error of judgment, but if in

reaching a conclusion *the law is* overridden or *misapplied* or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.") (emphasis added).

However, the Commonwealth contends that Dr. Wolford's testimony was admissible on an independent basis, arguing that Appellant opened the door to Dr. Wolford's rebuttal testimony during defense counsel's cross-examination of S.C. and the victims' mother. Assuming, *arguendo*, that defense counsel's cross-examination of a Commonwealth witness during the Commonwealth's case-in-chief could permit the Commonwealth to introduce rebuttal testimony *after* both the Commonwealth and the defense had rested,[5] we still conclude that there was no independent basis upon which to permit such testimony.

_____

[5] The Commonwealth fails to offer any explanation regarding why Dr. Wolford was not called during the Commonwealth's case-in-chief to rebut any matters raised by defense counsel during the cross-examination of the Commonwealth's witnesses, other than to assert the legal rule that such is not alone grounds for reversal as the order of presentation of evidence, if otherwise relevant, is left to the discretion of the trial court. Commonwealth's Brief, at 12-13 (citing **Commonwealth v. Mangini**, 386 A.2d 482 (Pa. 1978), and **Hickman**, **supra**). Nevertheless, because we ultimately conclude that Appellant did not open the door to Dr. Wolford's rebuttal testimony during those cross-examinations, we decline to address the propriety of the timing of her testimony in this regard. The evidence was admitted as rebuttal evidence, and no argument was made to the trial court regarding its general relevancy. **Mangini** is factually inapposite, as that case dealt with rebuttal evidence which was arguably relevant in the case-in-chief; in that case, the 'rebuttal' evidence was an opinion that footprints left in fresh snow could not have been left before the snowfall. *(Footnote Continued Next Page)*

The Commonwealth first points to the testimony of S.C., who was asked by defense counsel if she and her sister had seen a medical doctor, and S.C. responded that they both had. N.T. at 97, 103. Dr. Wolford's testimony did not serve to rebut anything said by S.C. with regard to this question. This exchange between defense counsel and S.C. did not, as the Commonwealth suggests, establish that there was no report of abuse by a doctor so as to create an impression in the jurors' minds that would justify rebuttal evidence of the nature provided by Dr. Wolford's testimony. The scope of defense counsel's question did not include any suggestion of a lack of physical evidence or symptoms of sexual abuse, nor did counsel even reference the results (or lack of results) from the physical examinations at all. Defense counsel merely asked if the girls had seen a doctor, and that line of inquiry ended with S.C.'s affirmative response. Accordingly, we disagree that defense counsel's cross-examination of S.C. opened the door to Dr. Wolford's rebuttal testimony.

The Commonwealth also points to defense counsel's cross-examination of the victims' mother. Defense counsel questioned her as follows:

> Q. And from 2008 to 2013, you didn't have any inkling of anything being wrong with either or your daughters?
>
> A. Actually, that's not correct. I had a lot of concerns about them. I had taken [S.C.] to two different psychologists. I had

*(Footnote Continued)* ————————————————

Here, the 'rebuttal' evidence/expert opinion is a general statistic that does not directly support any element of the crimes charged, but instead simply served to bolster the victims' credibility.

taken them to their pediatricians. And during the months of September and October, [S.C.] saw her pediatrician, she saw a specialist. [E.C.] was having difficulties with headaches. She saw her pediatrician. We took her to Children's Hospital for MRIs, and she also saw a neurologist.

Q. She did?

A. (Witness nods)

Q. And in any of those doctors, in all of those people, was there ever a report or were you presented with any type of abuse?

A. They were inconclusive. They didn't know what was wrong with them.

Q. There was never a diagnosis at all?

A. No diagnosis. They told me to give them vitamins and more sleep?

Q. Vitamins and more sleep. Including the psychologist?

A. I was not allowed to speak to the psychologist. Those were private conversations with the children.

N.T. at 110-11.

In the above-cross-examination, it was the witness, not defense counsel, who brought up the matter of S.C.'s and E.C.'s doctors' visits. Furthermore, defense counsel's subsequent question—"And in any of those doctors, in all of those people, was there ever a report or were you presented with any type of abuse?"—did not inquire as to what *symptoms* of sexual abuse the girls presented, but only whether sexual abuse was suspected. Certainly, had the girls reported sexual abuse verbally to those medical professionals, some sort of official or unofficial reporting would be expected. Moreover, the victims' mother had referenced both psychologists and a neurologist, not just a pediatrician. No reasonable juror would have

expected that psychologists and neurologists would have been conducting genital exams on the victims in order to look for *physical* signs of sexual abuse.

Given that the topic of the girls' doctors' visits was broached by the witness and not by defense counsel, and that defense counsel only asked a single follow up question from which the inference—that there 'should' be physical symptoms of sexual abuse—arises only tenuously, we conclude that the cross-examination of the victims' mother also did not 'open the door' to Dr. Wolford's rebuttal testimony. Accordingly, we cannot conclude that the trial court's permitting Dr. Wolford's rebuttal testimony was permissible on an alternative basis from the one stated. Thus, we hold that the trial court abused its discretion in permitting Dr. Wolford's testimony in these circumstances.

Appellant also claims that Dr. Wolford's testimony was barred because the Commonwealth ostensibly failed to disclose, through pre-trial discovery, the nature and content of Dr. Wolford's expert testimony. However, Appellant "submits that if this Court finds that Dr. Wolford should not have been permitted to testify as a rebuttal witness pursuant to [the improper rebuttal argument], the Court need not address the instant argument." Appellant's Brief, at 45 n.1. We agree. Having concluded that Dr. Wolford's testimony was not permitted as rebuttal evidence, we need not address whether her testimony was impermissible under the discovery rules (or,

relatedly, whether the remedy offered by the court was adequate to address any discovery violation).

Nevertheless, we must address the Commonwealth's contention that the admission of Dr. Wolford's testimony was harmless error, or whether a new trial is required.

> As we explained in [**Commonwealth v. Thornton**, 431 A.2d 248 (Pa. 1981)], "[t]he doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that '[a] defendant is entitled to a fair trial but not a perfect one.'" **Thornton**, **supra** at 251. **Accord**, **Commonwealth v. Drummond**, 775 A.2d 849, 853 (Pa. Super. 2001). In **Commonwealth v. Moore**, 594 Pa. 619, 937 A.2d 1062 (2007), our highest court reaffirmed that an error may be considered harmless only when the Commonwealth proves beyond a reasonable doubt that the error could not have contributed to the verdict. Whenever there is a "reasonable possibility" that an error "could have contributed to the verdict," the error is not harmless. **Commonwealth v. Passmore**, 857 A.2d 697, 711 (Pa. Super. 2004). "An error may be deemed harmless, *inter alia*, where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." **Commonwealth v. Moore**, **supra** at 1073. Harmless error exists when the error did not prejudice the defendant or the prejudice was *de minimis* or the erroneously admitted evidence was merely cumulative of other untainted evidence, which was substantially similar to the erroneously admitted evidence. **Commonwealth v. Passmore**, **supra** at 711.

**Commonwealth v. Koch**, 39 A.3d 996, 1006-07 (Pa. Super. 2011).

The Commonwealth argues that the admission of Dr. Wolford's testimony was harmless error because Appellant knew, per the medical

- 13 -

records provided during discovery, that a normal genital exam would not rule out sexual abuse, information that—the Commonwealth avers— Appellant was willing to put before the jury via stipulation. The Commonwealth further claims that Dr. Wolford's actual testimony differed only slightly from this information when she stated that "95 percent of the exams on children are normal. So for every 20 exams I would do, 19 of them would be normal." N.T. at 255 (hereinafter, "contested statement"). The Commonwealth also argues that the statistic contained in the contested statement is virtually unassailable,[6] and notes that Appellant has not suggested that it could have been disputed.

Appellant counters that 1) he only offered to stipulate to similar facts contained in the medical records after the trial court had ruled to allow Dr. Wolford's rebuttal testimony; 2) that the question of harmless error is directed at whether the jury might have been unduly affected by Dr. Wolford's testimony, not whether Appellant could have, or should have, been better prepared to cross-examine her or otherwise refute the 'truth' of her expert testimony.

---

[6] The Commonwealth provides extra-record studies in its brief to support this statistic, but does not appear to have sought, much less received, permission to supplement the record in this fashion. Ultimately, however, the Commonwealth's failure to do so does is not dispositive to our disposition in this matter.

Initially, we agree with Appellant's framing of the harmless error question. The Commonwealth focuses an undue amount of attention on the 'truth' of Dr. Wolford's contested statement—that victims of sexual assault rarely present physical symptoms of sexual abuse—and the 'fairness' of allowing such testimony in terms of whether Appellant should have been better prepared to refute or mitigate the impact of that testimony given what was disclosed by the Commonwealth prior to trial. However, both of those issues *predominately* go to the merits of whether Dr. Wolford's testimony should have been permitted in the context of the alleged discovery violation, not to whether the testimony, as received by the jury, might have impacted the verdict in this case.

Nevertheless, we acknowledge the veracity of Dr. Wolford's statement cannot be said to be completely immaterial to the harmless error question. Certainly, there are times when truthful information is so prejudicial that its disclosure to the jury risks impacting the verdict in a negative manner. For instance, it is axiomatic that the government cannot use evidence that a defendant has committed unrelated crimes as substantive proof of another crime, because "[t]he presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence." ***Commonwealth v. Trowery***, 235 A.2d 171, 172 (Pa. Super. 1967).

That does not mean, however, that exposing a jury to false information does not present a *greater* chance of impacting a verdict in a

negative manner. In the above circumstance, we might forgive an inadvertent, indirect, and fleeting reference to a defendant's prior record as harmless error, but it seems reasonable that we would be less inclined to do so if the 'fact' alluded to was demonstrably or categorically false. Similarly, we can imagine a scenario where the revelation of an inadmissible, but largely innocuous fact, *i.e.*, that a defendant, accused of shooting from the back seat of a vehicle in a drive-by shooting, did not own that vehicle used to commit that crime, would be less likely to affect a jury than the admission of evidence that *falsely* suggests his ownership of that vehicle. This is because inadmissible, but true facts *risk* impermissibly weak inferences, whereas *no valid inference* can flow from a false factual foundation. Thus, while we agree with Appellant that the truthfulness of Dr. Wolford's contested statement does not *automatically* render its admission as harmless error, we disagree with Appellant to the extent that he suggests that the contested statement's truthfulness is *completely* immaterial to our harmless error analysis, even if it is a minor factor in the context of this case.

With this in mind, we must weigh 1) the strength of the Commonwealth's case, against 2) the potential impact of Dr. Wolford's contested statement (and related explanation) given its nature and the circumstances of its presentation. **See generally**, **Koch**, **supra**. With respect to the weight of evidence in this case, Appellant avers:

This case lacked medical or other scientific evidence, such as semen, fingerprints, hair, skin, or DNA. No audio or video recordings captured any of the alleged sexual abuse. No e-mails or text messages evidenced improper conduct on behalf of [Appellant]. No admissions or confessions existed. Credibility was the key issue. The[] jury was forced to determine who was telling the truth based on oral testimony alone. Dr. Wolford helped to justify the lack of medical or scientific evidence, explaining that such simply does not exist in over 95 percent of child sexual assault cases, which, ***while shedding absolutely no light on whether E.C. or S.C. were actually abused***, permitted the jury to feel more comfortable in believing E.C. and S.C., despite some of their incredible claims, see e.g., ([N.T. at 72-75] (including testimony about (i) molestation at a crowded chorus concert and (ii) mutual oral sex while driving a moving automobile from the chorus concert to E.C.'s and S.C.'s home)).

Appellant's Brief, at 41 (citation omitted, emphasis in original).

Appellant's summary is apt. This was a classic, he-said/she-said case, with one notable variant: there were two, closely related victims whose testimonies, generally speaking, corroborated one another. Apart from the victims, however, the Commonwealth's only other witnesses were: 1) the victims' mother, whose brief testimony only addressed the circumstances surrounding the victims' disclosure of the allegations of sexual abuse; 2) Police Officer Scott Rick, who testified regarding the circumstances surrounding the receipt of the victims' complaints of sexual abuse; and 3) Dr. Wolford, whose brief rebuttal testimony did not extend far beyond the contested statement, despite being listed as the victims' attending physician at Children's Hospital.

Appellant testified on his own behalf, and he flatly denied molesting either victim and, furthermore, his testimony contradicted many of the

attendant facts alleged by the victims.[7]  Erika Higginbotham testified that she was the caretaker for the victims during the summers between 2008-2013, and would frequently take them to Appellant's home to swim during that period.  She was extremely close with E.C. and S.C., so much so that she thought of the girls "as if they were [her] two children."  N.T. at 162.  Despite this, she testified that the girls never complained about going to Appellant's home during those five years.

Appellant's wife testified that she never recalled a time when either E.C. or S.C. were alone with Appellant at their home, *id.* at 181, including a specific occasion when E.C. had slept over at their home per E.C.'s own request (but after Appellant had purportedly already molested her), *id.* at 177.  She also did not recall Appellant ever taking S.C. to a chorus concert.  *Id.* at 182.

On its face, the evidence of Appellant's guilt was not overwhelming.  The victims' testimonies included some detailed and plausible descriptions of abuse, but also some implausible accusations.[8]  The accusations of sexual

---

[7] For instance, Appellant testified that he and his wife would not have allowed either victim to be upstairs in their home during the girls' visits (where some of the abuse was alleged to have occurred).  N.T. at 203, 206.  He also testified that he never attended a chorus concert with S.C.  *Id.* at 204.

[8] As noted by Appellant, S.C. alleged that Appellant digitally penetrated her in the presence of "a lot of people" while the two inexplicably attended a chorus concert together.  *Id.* at 73.  How he engaged in such behavior while in the presence of countless other attendees, without drawing any attention,

*(Footnote Continued Next Page)*

abuse were sometimes corroborated by the other victim, but no evidence of abuse was corroborated by any other evidence or testimony beyond the testimony of the two sibling-victims. Indeed, the Commonwealth makes no effort to suggest that the evidence was overwhelming in this case, despite their burden to demonstrate harmless error beyond a reasonable doubt.

Thus, this case turned only on questions of credibility, yet there was nothing objectively implausible about Appellant's defense, and there were multiple portions of the victims' testimonies that appear implausible. Nevertheless, the jury convicted Appellant of most of the charges against him. In such circumstances, and despite the ultimate verdict, this was clearly a close case. It most certainly was not a case involving overwhelming evidence of guilt, nor was it a case where the primary issue was the degree of Appellant's culpability.

With that in mind, we must consider whether Dr. Wolford's testimony, and in particular the contested statement, and her associated explanation of that statement, did not affect the outcome of this case beyond a reasonable doubt. Such a conclusion is impossible in these circumstances. While the

*(Footnote Continued)* ─────────────

is ultimately unexplained. No evidence or other testimony even corroborated that they attended a chorus concert together, or why only S.C., but not also her sister, would have gone with Appellant to such an event. S.C. also testified that, on the return trip in Appellant's car, she performed oral sex on him, and he performed oral sex on her, *both while Appellant was driving*. **Id.** at 73-74.

- 19 -

statement by Dr. Wolford may have been truthful,[9] it was not responsive to any argument or testimony made by the defense or the defense witnesses. It appears only to have bolstered the victims' testimony, suggesting to the jury that the absence of physical symptoms of sexual abuse was normal. However, the defense made no attempt to suggest to the jury that the absence of physical symptoms of abuse was itself a valid basis for acquitting Appellant until after the trial court permitted Dr. Wolford's testimony.[10] Instead, the defense had focused on the unreliability of the victims' testimony based on the implausibility of certain events, inconsistencies in the accounts of the plausible events, the lack of any corroboration beyond the victims' testimonies, and the outright denials by Appellant.

The circumstances surrounding the introduction of Dr. Wolford's testimony also suggest that her statements risked impacting the jury's verdict. Dr. Wolford was the last witness heard by the jury, called after the defense had already presented its last witness (Appellant). Just prior to her

_____

[9] We have no reason to believe otherwise. However, as discussed above, we agree with Appellant that the truthfulness of Dr. Wolford's statement is not dispositive of whether the improper admission of rebuttal evidence is harmless error. Moreover, the Commonwealth cites to no legal authority suggesting that evidentiary error is harmless on that basis.

[10] Defense counsel briefly suggested during closing argument, addressing Dr. Wolford's testimony, that the multiple purported digital penetrations of the victim's vaginas by Appellant was inconsistent with evidence that the victims' hymens appeared intact and showed no indication of healing. However, no such argument was made at any time prior to Dr. Wolford's testimony.

testimony, the trial court informed the jury, "The Defense has rested and the Commonwealth has a rebuttal witness." N.T. at 254. Thus, Dr. Wolford's testimony naturally stood out as the last witness heard by the jury. Furthermore, as established above, there was no proper basis for rebuttal. Thus, the jury was left with the impression that the defense had presented a theory, argument, or fact which required rebuttal, when no such theory, argument, or fact had been presented.

Thus, we conclude that Dr. Wolford's contested statement unfairly bolstered the victims' testimony, in circumstances where her testimony was naturally spotlighted as the last testimony heard by the jury, and in order to contradict a theory never presented to the jury by the defense. As this occurred in a case dominated by questions of credibility, and where such determinations were not assisted by any physical or strong circumstantial evidence, we are compelled to hold that the abuse of the trial court's discretion, in permitting the rebuttal testimony of Dr. Wolford, was not harmless error. Accordingly, we must vacate Appellant's judgment of sentence and remand for a new trial.

Because of our disposition, we will not address Appellant's remaining claims, as they would not afford Appellant any greater relief.[11]

_____

[11] For the trial court's benefit, we do note at least one change in the law that would have compelled resentencing had we not decided to grant a new trial in this case. In applying mandatory minimum sentences of five years' incarceration, as set forth in 42 Pa.C.S. § 9718, for each of Appellant's

*(Footnote Continued Next Page)*

Judgment of Sentence ***vacated***. Case ***remanded*** for a new trial. Jurisdiction ***relinquished***.

_(Footnote Continued)_ ————————

convictions for AIAC, the trial court relied on **_Commonwealth v. Matteson_**, 96 A.3d 1064 (Pa. Super. 2014). TCO, at 20-21. In that case, this Court held that a particular mandatory sentencing provision set forth in Section 9718 did not violate the tenets of **_Alleyne v. United States_**, 133 S.Ct. 2151 (2013) (holding that any fact that increases mandatory minimum sentence for a crime must be submitted to jury as an element of that crime, and proven beyond a reasonable doubt), because the fact triggering the mandatory minimum sentence was identical to an element of the underlying offense. However, as correctly noted by Appellant, Appellant's Brief at 71, and as conceded by the Commonwealth, Commonwealth's Brief at 43, **_Matteson_** was effectively overruled by **_Commonwealth v. Newman_**, 99 A.3d 86 (Pa. Super. 2014) (_en banc_). **_See Commonwealth v. Wolfe_**, 106 A.3d 800, 806 (Pa. Super. 2014) ("**_Newman_** abrogated this Court's decision in **_Matteson_**."). Specifically, as noted in **_Wolfe_**, "[f]ollowing **_Newman_**'s instructions, we are required to conclude that Section 9718 is also _facially unconstitutional_." **_Id._** at 805 (emphasis added). Because Section 9718 is facial unconstitutional in its entirety, _any_ sentence issued under that statute is consequently illegal. Therefore, it is immaterial whether a particular subdivision of that statute is independently compliant with **_Alleyne_** based on the theory espoused in **_Matteson_**.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date:  8/9/2016